## LENNOX *v.* HENDRICKS.

BOUNDARY LINES.—Agreements in respect to boundary lines are based upon the fact that the true line of separation is not only fairly and truly in dispute, but that it is also to some extent, undefined and unknown.

STATUTE OF FRAUDS.—Where the transactions have not been such as to amount to an honest attempt to determine a doubtful line, the authorities have not permitted an agreement to stand which would operate as a violation of the statute of frauds.

APPEAL from Douglas County. The facts are stated in the opinion.

*James W. Hamilton*, for appellant:

Claims that the finding of facts are wholly insufficient to support the judgment of the court below. The court must pass upon the material points. (*McFadden* v. *Friendly*, 9 Or., 224; Civil Code, page 149, sec. 216.) Where adjacent owners of land, intending to establish the true line, agree upon one which is not such, and occupy under it, under a mistake as to the true line, neither is estopped to claim in a real action to the true line, especially, if the tenant has not made improvements on the land of greater value than that of the land without such improvements, and for which he is entitled to recover of the defendant. (3 Washburn on Real Property, 74; *Boston & Worcester R. R. Co.* v. *Geo. Sparhawk*, 5 Met., 459; *Toleman* v. *Sparhawk, et al.*, 7 Allen, 496; *Whitney* v. *Holmes*, 15 Mass., 152; *Gore* v. *Richardson*, 4 Greenleaf, 327; *Titus* v. *Morse, et al.*, 40 Maine, 348.)

Practical location and long acquiescence in a boundary line (rarely for a less period than twenty years) are conclusive, not upon the notion that they are evidence of a parol agreement establishing the line, but because they are of themselves proof that the location is correct, of so controlling a nature as to preclude evidence to the contrary. (*Baldwin* v. *Brown*, 16 N. Y., 359; *Reed* v. *Farr*, 35 N. Y., 117; *Sneed* v. *Osborn*, 25 Cal., 626.)

*William R. Willis*, for respondent.

If the court failed to find the facts upon material matters, the party wishing to take advantage of such failure should apply to the circuit court for a further and more specific finding, or procure them to be embodied in a bill of excep-

tions. (*Luse* v. *Isthmus Transit Railway Co.*, 6 Or., 125, 130.) We further claim that the matters mentioned as not found were not material. The finding of the court is conclusive of the facts. (*Hallock* v. *City of Portland*, 8 Ogn., 29, 30; *Jordan* v. *Brophy*, 41 Tex., 283.)

The true boundary may be ascertained and settled by the acts and agreements of the owners. A dividing line fairly agreed upon and marked out by the owners of adjoining tracts of land, will be conclusive upon both; and those claiming under them as to the true locality of their dividing line; (see *Williams* v. *Montgomery*, 16 Hun., 50; *Smith* v. *Hamilton*, 20 Mich., 433, 438; *Browning* v. *Atkinson*, 46 Texas, 605, 608–9; *Turner* v. *Baker*, 64 Mo., 218, 236 to 240; *Dupont* v. *Starring*, 42 Mich., 492; *McNamara* v. *Seaton*, 82 Ill., 493, 500; *Cutter* v. *Callison*, 72 Ill., 113; *Crowell* v. *Maughs*, 2 Gilman, 419, 423.)

By the Court, LORD, J.:

This was an action of ejectment brought to recover a certain piece of land described in the complaint. There is nothing in the pleadings to require further notice. The cause was tried by the court without the intervention of a jury; and the principal facts found and relied upon to sustain the conclusions of law and the judgment thereon, are, that in 1866 John Cox and wife sold and conveyed to one Tom Munds a certain portion of his donation claim containing two hundred acres; that at the time of the sale of said land by Cox to Munds, it was surveyed and the corners of said tract of land marked with stakes and stones, and that Cox and Munds were present at said survey and marking of said corners; that in 1872 Munds built a fence one-half way on the line he claimed to be the correct west line between himself and Cox, and that Cox acquiesced in said fence as being on the line between himself and Munds; that

in 1876 the defendant Hendricks became the owner of the tract of land deeded by Cox and wife to Munds, and that the defendant and Cox together constructed and extended the fence built by said Munds the remainder of the way, from where said Munds left off in 1872, to the south-west corner of said tract as then and now claimed by said defendant to be the correct corner, and that the said Cox then consented and agreed that said fence was on a correct division line between their said premises; that in 1879 the said Cox and wife sold and conveyed to the plaintiff Lennox the remainder of his donation claim, which tract adjoins the defendant on the south and west, and that since plaintiff has purchased said tract of land from said Cox and wife, he has had said Munds' tract re-surveyed, and said survey shows that the south-west corner of said Munds' tract is 80 feet east of the corner of said fence; that plaintiff's grantor and defendant's grantor made in 1872 a consentable line between their said premises for a distance of at least half of the way, and that in 1876 said plaintiff's grantor and the defendant made a consentable line, extending said line and fence the whole distance of the line between their said premises, on the line now claimed to be the correct line by the defendant, and to the south-west corner claimed to be the correct corner by said defendant.

As conclusions of law, the court found that the plaintiff was not entitled to the possession of the real property described in the complaint, or any part thereof, and that the defendant was entitled to a judgment for his costs and disbursements, which was entered in accordance therewith. Are the facts found by the court sufficient to sustain the judgment, or in other words, to establish the boundary line as claimed by the defendant? Agreements made in respect to disputed boundary lines are based upon the fact that the

true line of division is not only in dispute, but, to some extent, undefined and unknown. In *Terry* v. *Chandler*, the court say: "In all the cases where these agreements have been upheld and enforced in the courts, it has been upon the ground that the parties to them were owners and their lands adjoined upon the disputed and uncertain boundary. This is an indispensable prerequisite, without which the agreements could not have been sustained." And in *Turner* v. *Baker, et al.*, 64 Mo., 238, the court say: "This question was thoroughly examined by this court many years ago, and the conclusion was then reached, both upon principle and authority, that when the proprietors of contiguous estates, the boundaries of which are indefinite and unascertained, agree upon the lines dividing their estates, the calls in their respective deeds, fasten themselves upon the property to which they are thus applied, and the title passed by the conveyances covers and includes every part of the property so identified as being comprehended within the description, and contained in the grant." (*Taylor* v. *Zepp*, 14 Mo., 482; *Blair* v. *Smith*, 16 Mo., 273.) And the court further say: "The reason of the rule thus established must, of course, confine its operation to cases of disputed and uncertain boundary. In all cases where the location of the true boundary is known to the proprietors of coterminous estates, and they attempt for mutual convenience or other sufficient reason to transfer land from one to another by a parol agreement, changing the location of such boundary, the statute of frauds will inflexibly apply." (*Nichols* v. *Lyttle*, 4 Yerger, 456; *Gilchrist* v. *McGee*, 9 Yerger, 455; *Garborough* v. *Abernathy*, 1 Meigs, 413; *Vasberg* v. *Teater*, 32 N. Y., 568.) In New York it has been repeatedly held that a parol agreement to ascertain and establish a boundary line between the owners of adjoining lands which is in dis-

pute, and in some degree unknown and undefined, is not an agreement which extends to the title, and not therefore within the provisions of the statute of frauds. (*Sellick* v. *Addams*, 15 John., 197; *Jackson* v. *Gager*, 5 Cowen, 383; *Robertson* v. *McNeil*, 12 Wend., 578, 583.)

In *Smith* v. *Hamilton*, 20 Mich., 438, the court say: "It has been held very generally that where there has been an honest difficulty in determining the lines between two neighboring proprietors, and they have actually agreed by parol upon a certain boundary as the true one, and have occupied accordingly, with visible monuments or divisions, the agreement long acquiesced in shall not be disturbed, although the time has not been sufficient to establish an adverse possession. Where the transaction has not been such as to amount merely to an honest attempt to determine a doubtful line, the authorities have not permitted an agreement to stand which would operate as a violation of the statute of frauds." (*Kelloggs* v. *Smith*, 7 Cush., 375.) It seems to be clear from this review of the authorities unless the boundary line between the parties be truly in dispute and doubt, a parol agreement will not of itself affect the true title as it would be wholly imperative and void under the statute of frauds. Now it does not appear from the findings that the boundary line was uncertain or indefinite, or ever in dispute between Cox and Munds, or Cox and the defendant. Nor does the court find whether the fence built part of the way in 1872 by Munds, and extended by Cox and the defendant to the south-west corner of the tract of land in 1876, was built on the line as surveyed in 1866. Undoubtedly all the parties engaged at the different times specified in the construction of the fence, supposed it was on the true boundary line, and such was the only effect of Cox's acquiescence and admissions. There is nothing

here of an effort of any character to ascertain or determine a doubtful boundary, and to locate and establish it by agreement, acquiescence, or otherwise. Nor is there anything which shows that the boundary line between the grantors of the parties to this action was doubtful, uncertain and in dispute, and that such grantors settled and fixed upon a boundary line between them, and then built their fence, and severally occupied up to such line accordingly. It follows, therefore, that the judgment must be reversed.

Judgment reversed.