Argued February 25, decided April 13, rehearing denied June 1, 1909.

**BERNHEIM v. TALBOT.**

[100 Pac. 1107.]

BOUNDARIES—ESTABLISHMENT—ACQUIESCENCE.

1. Where a government survey made according to Act September 27, 1850, c. 76 (9 U. S. Stat. 497), for the purpose of dividing a donation land claim between a husband and wife, has been acquiesced in for a long time, it is conclusive as to the location of the dividing line, and such line is not changed by the location of a quarter section line.

BOUNDARIES—ESTABLISHMENT—OFFICIAL SURVEY.

2. An east and west quarter section line is not necessarily the same as a division line between the north half and the south half of a donation land claim of a husband and wife divided by the Surveyor General according to a

survey made under Act September 27, 1850, c. 76 (9 U. S. Stat. 497), because Rev.
St. U. S. § 2396, requires section lines to be straight lines from the established
corners to the opposite corresponding corners.

REFORMATION OF INSTRUMENTS--GROUNDS—MISTAKE.

8. An ambiguity arising out of a mortgagor's misconception that a quar-
ter section line and the division line between the north half and the south
half of a donation land claim were identical is not ground for correcting the
description, when the language clearly shows that the mortgagor intended to
convey to the division line established by the government survey, by which
the claim was divided,

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit by Theodore Bernheim, trustee, against
Ella Talbot, to enjoin a trespass and irreparable injury
by defendant upon lots 1 to 8 in block 4, 1 to 16 in
block 6, 1 to 10 in block 7, and 1 to 25 in block 5,
Council Crest Park, City of Portland, county of Mult-
nomah, State of Oregon.

Plaintiff alleges that he is the owner of said lots, and
that defendant is trespassing thereon, and is about to cut
certain growing trees thereon, to his irreparable injury.

The answer admits that plaintiff is the owner of all
of said lots except 1, 2, 3, and 4 of block 4, and lot 1
in block 5, and denies all other allegations of the com-
plaint, and, by cross-complaint, for affirmative relief,
alleges that she is the owner of a strip of ground bounded
as follows:

"Commencing at a point in the north boundary line
of the southwest ¼ of section 9, township 1 south, range
1 east of Willamette Meridian, at the intersection of the
east boundary line of the John B. and Sarah A. Talbot
donation land claim, near which point is planted an iron
rod; running thence west, along the north boundary line
of the southwest ¼ of section 9, four hundred and
twenty-eight and eleven hundredths (428.11) feet, more
or less, to the center of the county road; thence north to
the division line between the John B. Talbot half and
the Sarah A. Talbot half of the donation land claim of
the said John B. and Sarah A. Talbot; thence east, along
the said dividing line between said John B. Talbot half
and said Sarah A. Talbot half of said donation land claim,

428.11 feet, more or less, to a stone marked 'T,' which is
set at the eastern extremity of said dividing line between
the said north and south half of said claim; thence south
along the east line of the Sarah A. Talbot half of said
donation land claim, to the place of beginning."

And that portions of said lots 1, in block 5, and 1, 2,
3 and 4, of block 4, overlap and are included in said
strip of land belonging to defendant, and further alleges
that the true boundary line between the property of plain-
tiff and defendant is the quarter section line between
the southwest ¼ and the northwest ¼ of said section
9, the intersection of which with the east line of said
donation land claim is marked by said iron rod, and prays
that the north line of plaintiff's property be adjudged
to be the said north line of the said southwest ¼ of
section 9.

Plaintiff denies the affirmative matter of the answer
and cross-complaint, and pleads title to the property
claimed by him through a mortgage executed by defend-
ant's ancestor, Sarah A. Talbot, and foreclosure and sale
thereunder.    Both parties deraign title through Sarah
A. Talbot.    John B. Talbot and Sarah A., his wife, were
patentees of the donation land claim No. 65, by the terms
of which patent Sarah A. Talbot owned the south half
of the claim, and on March 30, 1891, she mortgaged to
the Savings & Loan Society the following portion thereof:

"Commencing at a point in the north boundary line of
the southwest quarter of section 9, marked by a stone,
the same being the middle point in the east line of said
D. L. C., and also the northeast corner of the south (or
Sarah Ann Talbot) half of said D. L. C. of John B.
and Sarah A. Talbot; thence running south along the
east line of said D. L. C., 160 rods, to a point in the
south line of said section 9, the same being the southeast
corner of said D. L. C. of John B. and Sarah Ann Talbot;
thence west along the south line of sections 8 and 9, 110
rods; thence north, 160 rods, to a point in the division
line between the John B. Talbot half of said claim and
the Sarah Ann Talbot half thereof; thence east along

said division line, 110 rods, and to the point of commence-
ment, containing 110 acres of land (also other real
estate)."

Prior to this time, on November 18, 1882, said Sarah
A. Talbot, who had acquired title thereto, conveyed to
James Bennett a parcel of ground 4.47 chains square,
described as "commencing at the northeast corner of
the south half of the John B. Talbot and Sarah A. Talbot
donation land claim," running thence west and north.
The cause was tried before the court, whose findings
were in favor of plaintiff, and from a decree thereon
defendant appeals.                              AFFIRMED.

For appellant there was a brief with oral arguments
by *Mr. Granville G. Ames* and *Mr. Cicero M. Idleman.*

For respondent there was a brief over the names of
*Mr. Charles H. Carey, Mr. Lotus L. Langley* and *Mr.
Harrison Allen,* with an oral argument by *Mr. H. K.
Sargent.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. The difficulty in this case arises largely in determin-
ing the joint of intersection of the division line between
the north ½ and south ½ of the donation land claim
with the east line thereof. Counsel for defendant in
his brief assumes that "a point in the north boundary
line of the southwest ¼ of section 9 where it inter-
sects the east line of the donation land claim," "the
middle point in the east line of the donation land claim,"
and "the northeast corner of the south ½ of said claim,"
refer to but one and the same point, which is not neces-
sarily true. Counsel seems to take it for granted that
the north line and south line of the donation land claim
are identical with the north and south lines of sections
8 and 9, respectively. But by comparing the courses
of the plat with those in the patent, it would seem they
are not. The boundaries of the claim are south, west,
north, and east, while the south lines of sections 8 and

54 OR.—2

9 are not due west, nor both in the same course, varying 1 degree and 6 minutes. The survey of the donation land claim was not part of the survey by which the government land was sectionized, but a special survey, recorded in a book for that purpose, under the provision of chapter 76, 9 U. S. Stat. 497 (Act. Sept. 27, 1850). The field notes of the survey of the claim may show, however, that its north and south lines were intended to follow the section lines, but this act provides that the wife shall have half of the claim in her own right, and that "the Surveyor-General shall designate the part enuring to the husband and that to the wife and enter the same in the record in his office." The evidence before us indicates that this division was made at or about the time of the survey of the claim.

The defendant, Miss Talbot, in her testimony states, in answer to the question:

"Q. 'Miss Talbot, you say that at the time you first became acquainted with the donation land claim of your mother and father that they had agreed, or soon thereafter agreed, upon the division line between the north and south half, and set a monument?'

"A. 'I don't know as they particularly agreed, but in the division of the claim at the very commencement of that taking up of the claim and surveying it around there, I don't think I was old enough to remember it.' "

And in defendant's Exhibit 3, W. B. Marye, county surveyor of Multnomah County, on May 8, 1885, at the request of Sarah A. Talbot, established certain corners of the claim. He was not making a survey, but identifying old corners and placing permanent monuments. He says he found the northeast corner of the claim and at which he set a stone 24 inches in length and 6 inches square, and squared off at the top and running to a point, with the letter "T" sunk thereon on the south side.

"I then went to the corner stake, the same being at the intersection of the division line of said Talbot donation land claim, where the same intersects the east boundary line of said claim. Said stake was set by

Leland, a Government surveyor. I replaced this stake with a stone monument, the same length and width as a stone monument heretofore mentioned, with the letter 'T' facing west."

This is corroborated by Miss Talbot:·

"Q. 'Now, about the boundaries with this northeast corner of the tract of land that was mortgaged to the company, do you know when that corner was established where the stone monument now is?'

"A. 'Yes, sir. * * '

"Q. 'When was it?'

"A. 'Well, as far back as I can remember, there was a stake there. Then, when Mr. Burch made the survey of the claim for the Ford tract, he ran through the claim and drove another stake, and it was a cherry and the cherry—a cherry stake does not last very long. It decays and it was then getting to be, when the stone monument was set there—it was getting to be a pretty well decayed stake, and for that reason my mother had the monument set both at the northeast corner and that division and at the southeast corner. The witness trees at the northeast corner had been chopped down by men who had been put in there to cut cordwood, and there was nothing but stumps left, and there was virtually the same intention to obliterate that line, and for that reason we had this monument set, and we always called that line the line between the north and south half of father's and mother's tract.'

"Q. 'Up to 1885 or 1886 was there ever any other line known to you ·or to the family, so far as you knew, on the dividing line between your father's and mother's part, except the one running to the stone marked "T" ?' * *

"A. 'No. The line in the claim was established, the center of the claim line was established after we had a suit in court, establishing the eastern boundary of the claim. Then the commissioners drove an iron rod, and after that time we considered that the center of the claim, but all deeds prior to that were made from the old claim line from the center of the claim.'

"Q. 'And that was marked at that point by the ·stone?'

"A. 'That was marked at that point by the stone marked "T," turned west. That was the only ˙ monument my mother saw set.' * *

"Q. 'That was the suit with Judge Marquam?'

"A. 'Yes. Then after that the surveyors squabbled, and had so many fusses over that line, between that and in making her mortgages on her half of the claim, she took that line through the center of the claim as the section line.' "

This is further corroborated by defendant's statement in her answer describing the north line of the tract she now claims as "thence north to the division line between the John B. Talbot half and the Sarah A. Talbot half of the donation land claim of said John B. and Sarah A. Talbot; thence east, along said dividing line between the said John B. Talbot and the said Sarah A. Talbot half of said donation land claim, 428.11 feet, more or less, to a stone marked 'T,' which is set on the eastern extremity of said dividing line between the north and south half of said claim." So we conclude there can be no doubt but the stake, replaced by a stone marked "T" turned west by Marye in 1885, was the monument set at or about the time of the survey of the claim as marking the point in the eastern boundary of the claim, indicating the boundary between the part inuring to the husband and that to the wife, as designated by the Surveyor-General, and has been acquiesced in for many years by both parties thereto, and is conclusive now as indicating the intersection of the middle boundary line with the east line of the claim.

2. Evidently, as shown by the testimony of Miss Talbot, Sarah A. Talbot attempted in 1888 to adopt or accept the quarter section lines through sections 8 and 9 as the division line through the claim, and to substitute the point fixed by the iron pipe for the one fixed by the Government surveyor, as actually indicating the northeast corner of the south half of the claim. But the proof does not establish that this is the middle of the east line of the claim, nor does the location of the quarter section line change the line of division acquiesced in for so long. Another reason why the east and west quarter section

lines through sections 8 and 9 are not necessarily the same, as the dividing line through the claim, is that the quarter section lines must be "straight lines from the established corners to the opposite corresponding corners" (Rev. St. U. S. § 2396 [U. S. Comp. St. 1901, p. 1473]) ; and by reason of the fact that the section lines are not always parallel with corresponding opposite lines, nor are all section lines the same length. The quarter section lines through a section do not necessarily bisect each other. Neither are the east and west quarter section lines through sections 8 and 9 necessarily one continuous straight line, nor do they necessarily bisect the east and west lines of the donation land claim. The opposite boundary lines of the claim are parallel and of equal length, and therefore the quarter section line of section 9 can have no relation to the dividing line of the claim. The quarter section lines are not necessarily the basis upon which the division of the claim must be ascertained. The result of the action of the commissioners, who in 1888 established the line between the Talbot donation land claim and the Donor claim on the east, which may be the east line of the Talbot claim, has no bearing upon the point of intersection of the division line of the Talbot claim with the east line thereof. There was no controversy as to that point, and, by the return of the commissioners, it appears they were not attempting to run on the east line of the Talbot claim, as described in the patent, as they commenced at a point 10 chains east of the northeast corner of section 8, while that corner of the claim is described in the patent as 9.47 chains east of that corner. In any event, the result of the acts of the commissioners has no influence upon the question here.

3. We will next consider whether the mortgage is ambiguous. A mistake in it cannot be corrected in this suit as the facts are not alleged nor are the parties present to authorize such relief. 24 Am. & Eng. Enc.

Law (2 ed.) 655. The only ambiguity that can be suggested arose out of a misconception by Sarah A. Talbot at the time the mortgage was executed that the quarter section line and the division line of the claim were identical. There can be no doubt from the language of the mortgage but what she intended to convey to the middle line of the donation land claim. It is expressly so stated:

"Commencing at a point * * marked by a stone, the same being the middle point in the east line of said donation land claim and also the northeast corner of the south (or Sarah A. Talbot) half of said donation land claim."

The third and fourth courses are described as:

"Thence north 160 rods to a point in the division line between the John B. Talbot half of said claim and the Sarah A. Talbot half thereof; thence east along said division line 110 rods, and to the point of commencement."

We find no ambiguity in this description, and we conclude that the description includes the ground in controversy in this suit.

The decree will be affirmed.

AFFIRMED: REHEARING DENIED.

---

Decided June 1, 1909.