Argued October 14, 1930; affirmed March 31, 1931

## KINCAID *v.* PETERSON ET AL.

(297 P. 833)

*Lawrence T. Harris,* of Eugene (Harris, Smith & Bryson, of Eugene, on the brief), for appellants.

*H. E. Slattery,* of Eugene, for respondent Kincaid.

*S. M. Calkins,* of Eugene, for respondents Hayes.

BELT, J. This is a suit to determine the ownership and title to a narrow strip of land abutting upon and south of the Pacific highway near the eastern boundary

of the city of Eugene. The land involved is approximately one-sixth of an acre and its award to appellants would deprive plaintiff of frontage upon the highway for a distance of about 400 feet. The decision of the case hinges upon the location of the north boundary line of the Zara Sweet donation land claim. Plaintiff asserts that, so far as the land involved is concerned, the boundary line in dispute is located in the Pacific highway and that he owns the land abutting upon and south thereof. Appellants claim that the northern boundary line of the donation land claim, at point in controversy, is south of the highway and that the land between such boundary line and the highway is owned by them.

At time of commencement of this suit each of the defendants Peterson and Eugene Woolen Mill Company had an undivided one-half interest in lots 4 and 5 in section 33 and lot 8 in section 34, township 17 south, range 3 west of the Willamette meridian, located north of the boundary line in question. The Eugene Woolen Mill Company acquired its one-half interest from the defendant Emil Koppe. After the commencement of the suit, Peterson and the Eugene Woolen Mill Company conveyed the lots to the Eugene Power Co. The defendants James Hayes and his wife, Audrey Hayes, own land adjoining that of the plaintiff on the east which, they assert, abuts upon the highway on the south. The only controversy between the defendants Hayes and the plaintiff was as to the eastern and western boundary lines of their property, which has been settled by agreement. They are in accord as to the location of the north boundary line. Hayes and his wife have also agreed with appellants that if the court determines the north boundary line in keeping with the latter's contention the parties will have joint

use of the land in controversy between them. Reference to the following plat may be helpful in understanding the issues.

The north boundary line of the claim as shown on the above plat represents its location as contended by appellant defendants whose interests have been acquired by the Eugene Power Co. There is no dispute about the location of the northwest corner, as it is established beyond controversy. Neither is the east line of the claim questioned. The trouble and uncertainty over the north boundary line has arisen by reason of the fact that the northeast corner of the claim, which was the beginning point of the original government survey, has been lost for many years. Surveyors of long experience and recognized ability disagree as to its location. Defendants assert it is at a gate post or iron pin at the south edge of the highway. Plaintiff says it is located 28.27 feet north of the gate post, which point would be a foot or two north of the center line of the paved highway. Appellants claim no land south of the northern boundary line of the donation land claim and plaintiff asserts no ownership over any north of the highway. It will be observed that there are three tangents in the north boundary line. The location of the second angle in line beginning at the northwest corner of the claim determines the controversy. Appellants argue that this angle in the boundary line is 38 feet south of the edge of the highway and is marked by an iron pipe numbered 3 on the plat. Plaintiff says such angle in the line is located within the boundaries of the highway.

The trial court, in keeping with the contention of the plaintiff, decreed that the north boundary line of the Zara Sweet donation land claim is described as follows:

"Beginning at a point north of the middle of the pavement in the Pacific highway 28.27 feet north 00° 15' east of pipe number 1 described within the findings

herein, which pipe number 1 is located 4,653 feet north 00° 15′ east from the corner of the inner angle on the east line of donation land claim number 44, and which beginning point is 3,834.52 feet east and 154.82 feet north of the northwest corner of the Zara Sweet and wife donation land claim No. 68, and thence run south 73° 23′ east a distance of 1,856.2 feet where there is driven an iron rod 1¼ inches in diameter and 28 inches long, said rod being driven to the surface, from which a telephone pole bears south 30° 30′ east 13.7 feet, and from which the northwest corner of the main building of Mammy's Cabin bears south 61° 45′ east 44.8 feet, and from which the southerly edge of the pavement on the Pacific highway bears north 18 feet; thence run north 61° 35′ east a distance of 1,215.6 feet which is an angle in the north boundary line of said D. L. C. No. 68; and thence run south 78° 27′ east a distance of 1,008.8 feet to the northwest corner of the said Zara Sweet and wife donation land claim number 68, which claim is parts of sections 33 and 34 in township 17 south in range 3 west of the Willamette meridian in Lane county, Oregon.''

The effect of such adjudication is that appellants own no land south of the Pacific highway and that plaintiff is the owner of the land described in his complaint.

We next consider whether the line thus established is in accord with the law and facts of the case. Appellants say that, since it is impossible by a survey to determine the exact point which the original surveyor took as the beginning point or northeast corner of the claim, the court should follow the rule of practical construction and locate such corner at a point which for many years was recognized by all property owners as the true northeast corner of the claim. Such point, the appellants contend, is marked by a gate post at the south edge of the highway and as shown on the plat. Furthermore, appellants say that if the rule of

proportionate measurements be invoked, as was done by Waggoner in establishing the corner, the angle in question in the north line would be south of the highway. Plaintiff asserts there is no reason to resort to the doctrine of practical construction and that the north boundary line, in view of known corners, can, by application of recognized rules of surveying, be established with certainty.

On the engineering phase of the case, plaintiff relies largely upon the survey of G. H. Waggoner, deputy surveyor of Lane county. To locate the northeast corner, Waggoner began at the re-entrant angle in the known and accepted east line of the claim, and then ran north along the old fence on the line 70.50 chains, or 4,653 feet, in accordance with first call in the government field notes. The distance from such angle in the east line to the iron pipe or gate post is, according to Waggoner, 4,624.73 feet. He, therefore, concluded that the true corner must be north of the gate post, an approximate distance of 28.27 feet, being the distance between the call of 4,653 feet in the field notes and the distance by actual measurement of 4,624.73 feet from angle to gate post. P. M. Morse, county surveyor of Lane county, a witness for the plaintiff, testified that he had measured north along the east line of the donation land claim until he reached an iron pipe at the south edge of the highway and found it to be 4,628 feet between such points. In his opinion the northeast corner of the claim was 25 feet north of the iron pin above mentioned. Waggoner next proceeded from the known northwest corner and surveyed along the north line. Following the courses and distances in the original field notes, it was found that these calls located the northeast corner further north than as determined by measurement from the angle on the east line and that

the third tangent in the north line would intersect the east line, if extended, at a point in the pavement between 25 and 28 feet north of the gate post.

If the north line be run according to the distances and courses in the government field notes it will, according to W. C. Clubb, a surveyor and witness for appellants, extend 51.3 feet east of and 41.31 feet north of the gate post or northeast corner as claimed by appellants. Beginning at the northwest corner, the courses and distances of the three tangents of the north boundary line are as follows: First tangent, north 78° 30' east 15.50 chains, or 1,023 feet; second tangent, south 62° east 18.60 chains, or 1,227.60 feet, and, third tangent, north 73° 30' east 28.50 chains, or 1,881 feet. Accepting this testimony as true, it can be ascertained by mathematical calculation that the third tangent of the north boundary line run at a course of north 73° 30' east would intersect the east line of the claim, if extended, at a point 26.12 feet north of the gate post. Since, according to calls in government field notes, the north boundary line is longer by 51.3 feet than the actual survey of the ground discloses, Waggoner apportioned the error, or shortage of land, to the three tangents of the line. Following the rule of proportionate measurement, the error would be apportioned as follows: First tangent calls for a distance of 1,023 feet. The boundary line is 4,131.6 feet long. Let 1,023 be the numerator of the fraction and 4,131.6 be its denominator, which multiplied by 51.3 would equal 12.7 or the number of feet to be deducted from the distance of the first tangent. Such apportionment of error would result in bringing the first angle of the north boundary line about three feet further south than it would be according to the call in the government field notes. Pursuing the same method of calculation, a

shortage of 15.79 feet should be apportioned to the second tangent and a shortage of 22.81 feet to the third tangent. The apportionment of error as to the second tangent would result in bringing the angle further north, thereby straigtening the north boundary line. Attention is directed to some slight errors made by Waggoner in his calculations, in the application of the rule of proportionate measurement. We note particularly that he apportioned too great a part of the error to the third tangent. Such discrepancies, however, did not materially affect the location of the north boundary line.

Section 27-1820, Oregon Code 1930, provides that the county surveyor, in the resurvey of lands surveyed under authority of the United States, shall observe the following rules: "(1) Section and quarter-section corners, and all other corners established by the government survey, must stand as the true corners; (2) they must be re-established at the identical spot where the original corner was located by the government survey, when this can be determined; (3) when this cannot be done, then said corners must be re-established according to the government field notes, adopting proportionate measurements where the present measurements differ from those given in the field notes." In the establishment of the lost corner, the surveyors who testified for the plaintiff obeyed the above statutory rules. Their lines were run from known and established corners as made in the original survey. The civil engineers on behalf of the appellant defendants utterly ignored the known reentrant angle on the accepted east line. There is no testimony to challenge the measurements of Waggoner and Morse from such angle to the gate post.

■ There are no monuments or marks to identify the gate post as the northeast corner of the claim. Since the corner as claimed by appellants is involved in uncertainty, we must look to the courses and distances from those corners which are known and established, in order to locate the corner in question: *McDowell v. Carothers,* 75 Or. 126 (146 P. 800); *Albert v. Salem,* 39 Or. 466 (65 P. 1068, 66 P. 233); *King v. Brigham,* 19 Or. 560 (25 P. 150). In *King v. Brigham,* supra, which is quoted with approval in the Albert case, it is said:

"While the rule of law is, as heretofore stated, that actual location of the lines and monuments on the ground will control over courses and distances, we think that where it is claimed that such lines and monuments do not agree with the courses and distances, the evidence of their actual location should be so clear and satisfactory as to establish that fact to the entire satisfaction of the court, and to place beyond question the actual location of the line or monument."

The rule for locating lost corners is thus stated in *Ewell v. Hauser,* 140 Ky. 459 (131 S. W. 186):

"But, however unsatisfactory it may be to establish lines with only one corner in the original survey to be governed by, it is often the best that can be done, and it is the settled practice in locating lines to begin at a known corner and treat it as the beginning corner when the other corners are lost, and to find and locate the other corners by the courses and distances mentioned in the survey."

In the instant case, we think the northeast corner has been established with reasonable certainty by following courses and distances from the two known corners of the claim, and by apportionment of error in the north line.

■■ It remains to be determined whether the north boundary line is to be established by the rule of prac-

tical construction or by the application of engineering principles. If the latter method be invoked, it follows, in view of what has been said, that the decree of the lower court should be affirmed.

The doctrine of practical location is based principally upon agreement, express or implied, of adjoining landowners, whereby for many years they recognize or acquiesce in a certain line as their true boundary line. The doctrine is closely akin to that of adverse possession, although the authorities recognize a clear distinction between them: *Carstensen v. Brown,* 32 Wyo. 491 (236 P. 517). Mutual acquiescence and recognition by the adjoiners is essential to practical location. Furthermore, there must be, at the time of the location, a disputed, indefinite, or uncertain boundary line between the adjoining owners. It is said in *Adams v. Warner,* 209 App. Div. 394 (204 N. Y. S. 613):

"When a disputed or uncertain line is fixed by practical location, it is binding, not by way of transfer of title, but by way of estoppel."

The evidence does not show that any party to this suit acquired title by adverse possession to the land in dispute. Nor do we think the doctrine of equitable estoppel is involved.

■ Appellants claim that they are entitled to rely on the rule of practical construction in the establishment of the north boundary line for the reason that grantors for many years conveyed property in the eastern part of the claim, recognizing the point marked by the gate post as the northeast corner. In 1899, William Judkins and wife conveyed to J. R. Campbell and W. R. Walker a tract of land described as follows:

"Commencing at a point 13.85 chains west and 14.30 chains south of the N. E. corner of said claim, thence

north 10.25 chains to the north line of said donation claim, thence S. 73½° west 14.40 chains along said north line of said donation claim being on or near the south line of the county road (this is at the point indicated by the iron pin marked No. 4 on the plat), thence north 62° W. 65 links to center of said county road (the 38 ft. iron pin south of the highway, marked No. 3 on the plat), thence S. 67° W. 1.31 chains to stone at beginning point of county road No. 95, (iron pin in bed of street car right of way, marked No. 2 on plat) thence south 1.10 chains to north edge of railroad right of way, (iron pin marked No. 1 on plat) thence S. 54° 9' E. along said right of way 8.4 chains to point due west of place of beginning, then east 8.70 chains to place of beginning.''

The matter marked by parentheses is not included in the description but has been inserted by the court merely for the purpose of explanation. When Walker and Campbell conveyed to Hayes, the same description of the property was followed. Those who conveyed property in the western part of the claim designated the northwest corner as the beginning point of the description. If it be assumed that the gate post is the true northeast corner of the claim, it follows that, in view of the description in the conveyance made by Judkins and his successors in interest, the north boundary of the claim is as contended by appellants. However, in our opinion, it is clear that those who made such conveyances acted upon an erroneous assumption as to the northeast corner and since the appellants or their predecessors in interest in no way participated or acquiesced in such designation of the corner, the rule of practical construction is inapplicable. At the time that Judkins, in 1899, made conveyance to Campbell and Walker there was no dispute as to the boundary line involving appellants or their successors in interest.

For many years a fence was located coincident with the south line of the highway extending from the gate post past the Hayes property.

While the evidence is conflicting, we think it is fairly well established that the land in dispute, prior to the construction of the present paved highway, was at one time or another, all used for road purposes. Some of the witnesses testified that before the road was moved north, the point marked by the 38-foot pin was a short distance north of the old road.

■ We conclude that the trial court was right in rejecting the rule of practical construction and that the boundary line as fixed by the Waggoner survey is substantially correct.

The decree of the lower court is affirmed.

BEAN, C. J., and BROWN, J., concur.