Argued September 7, affirmed September 21, 1960

DRURY ET UX *v.* PEKAR ET AL

355 P. 2d 598

38

*Dan W. Poling,* Newport, argued the cause for appellants. With him on the briefs was Herbert W. Carter, Salem.

*Bruce W. Williams,* Salem, argued the cause for respondents. On the brief were Williams & Skopil, Salem.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and KING, Justices.

KING, J. (Pro Tempore)

This suit is to determine the ownership of a narrow strip of land approximately 23.64 chains long, about 76 feet wide at the southerly end and approximately 20 feet wide at the northerly end, and damages for some merchantable timber removed. The timber value was not tried in this case.

The plaintiffs, James C. Drury and Beatrice C. Drury, purchased some property in the south half of section 32, township 8 south, range 3 west of the Willamette meridian, Marion County, Oregon, which property lies immediately west of the center line of said section 32, running north and south. The plaintiffs also bought other property in the vicinity, not involved in this case.

Their deed to the property was dated August 20, 1946, and was recorded August 27, 1946. They had been in possession of the property under a contract lease agreement since November 15, 1943.

On December 30, 1947, the defendant Dorothy Pekar secured a deed to the property on the east side of the center dividing line running north and south through said section 32. Her property extended 23.64 chains northerly along said dividing line from the one-fourth section corner on the southerly boundary of section 32. She also purchased other property not material to this case.

An old fence, principally of barbed wire and posts, extended along most of the easterly border of the strip of land claimed by the plaintiffs, while the defendants claimed to the straight line between the north and south corner posts, which line they had surveyed and which constituted the westerly line of the strip of land in controversy. The circuit court heard the case and viewed the premises and then found that the "plaintiffs have not established their claim of title by adverse possession to the disputed tract." The court then ordered "that the complaint be dismissed and held for naught and that neither party here to recover costs * * *."

From this decree the plaintiffs appeal, alleging only one assignment of error as follows:

"The Circuit Court erred in failing to render a decree declaring the ancient fence to be the boundary line of the adjoining Drury-Pekar tracts of real property."

The plaintiffs' claim in this court is based on the doctrine of "practical location" and long acquiescence by the owners of adjoining lands in the location of the dividing line, sufficient to establish it as the true line.

Defendants claim (1) that plaintiffs pleaded and tried their case in the circuit court on the "adverse possession theory" and should not be allowed to submit their case on a different theory in this court, and (2) if they are allowed to submit the case on the "practical location" theory and acquiescence in the old fence as a boundary, the facts are not sufficient to sustain those theories. The complaint in this case indicates that it was at least started as an adverse possession suit.

The amended complaint alleges:

"I.

"* * * * *

"II.

"During all of said time above mentioned, plaintiffs have been in open, notorious, exclusive and hostile possession of said real premises and the whole thereof including the easterly portion of the real premises described in plaintiffs' Exhibit 'A', to a certain woven wire fence being the easterly boundary of plaintiffs' real premises and the westerly boundary of the real premises owned by defendant Dorothy Pekar.

"III.

"That during said period of time above referred to, plaintiffs' claim to the ownership of the

real premises above described has been visible to defendants and each of them and their predecessors in interest."

To this complaint the defendants filed a general denial as an answer.

As pointed out above, the findings and decree of the trial court state that the case was heard and decided as a suit in adverse possession. There is nothing in the record to show any objections to this decree, nor any other theory of the case being called to the trial court's attention after the decree, except the notice of appeal.

It is noticeable that the findings of fact and decree start as follows:

"This matter having been at issue upon the amended complaint of the plaintiffs and the answer of the defendants, and *it being stipulated by and between the parties that the issues involving the adverse possession of the plaintiffs* come on for trial * * *." (Emphasis added.)

The plaintiffs do contend in their reply brief that they rely upon a preliminary discussion between court and counsel at the outset of the trial to sustain their claim that the case was tried on the theory of establishing a boundary by acquiescence and practical location. That discussion is as follows:

"THE COURT: Mr. Carter, then as I understand your statement, the question of valuation of timber is not involved here?

"MR. CARTER: Not at this time by stipulation of counsel, as I understand it, that we are here today to determine the correct boundary line and from that we can determine whether or not there has been a trespass. We would like to reserve the question of determination of damages until after a ruling of the Court is secured on the

boundary line question. Am I correct in that, Mr. Williams?

"MR. WILLIAMS: I think that is essentially the issue before the court here, which I think for the convenience of everybody might be resolved *solely to the establishment of the property rights to the disputed portion of property,* isn't that right, and the other matter raised within the amended complaint might very well come on for additional . . .

"MR. CARTER: I think so, and very possibly might be resolved between the parties.

"THE COURT: And do you agree that this matter at present is to be tried as a suit in equity?

"MR. CARTER: Yes, sir.

"THE COURT: Mr. Williams?

"MR. WILLIAMS: Yes, it is so stipulated by the defendants, solely now M. A. Pekar and Dorothy Pekar." (Emphasis added.)

While plaintiffs' counsel did mention that they were there to determine the correct boundary, it seems clear from the statement of defense counsel that there was no such understanding and agreement on their part. There was no attempt to amend the pleadings, either before, during, or after the trial.

■ We believe the case was tried in the lower court as an adverse possession case, that it was properly decided as such, and that the evidence fell far short of establishing the title in the plaintiffs by adverse possession. The plaintiffs apparently agree that adverse possession has not been established, as they have raised no issue, cited no cases and pointed out no facts to sustain their original claim of adverse possession.

The trial court properly denied plaintiffs' claim

of adverse possession. *Hamilton v. Fluornoy*, 44 Or 97, 74 P 483; *Talbot v. Cook*, 57 Or 535, 112 P 709; *Chapman v. Dean*, 58 Or 475, 115 P 154; *Reeves et al. v. Porta*, 173 Or 147, 144 P2d 493.

■ As pointed out above, it is apparent that plaintiffs have presented their case on a different theory in this court than it was tried on in the court below. They have abandoned the theory of "adverse possession" and have here adopted the theory of acquiescence and practical location. This they should not be permitted to do.

This court has many times held that the appeal cannot be tried on a different theory from that presented in the trial court. *Rasmussen v. Winters*, 82 Or 674, 162 P 849; *Friberg v. Elrod et al.*, 136 Or 186, 296 P 1061; *Pelton v. Gen. Motors Accept. Corp.*, 139 Or 198, 7 P2d 263, 9 P2d 128.

■ This decision might well end here, but it is not necessary to affirm this case on the above ground alone. The plaintiffs' case fails to prove the essential elements of acquiescence or the doctrine of practical location.

> "The doctrine of practical location is based principally upon agreement, express or implied, of adjoining land owners, whereby for many years they recognize or acquiesce in a certain line as their true boundary. The doctrine is closely akin to that of adverse possession, although the authorities recognize a clear distinction between them: Carstensen v. Brown, 32 Wyo. 491, (236 P 517). Mutual acquiescence and recognition by the adjoiners is essential to practical location. Furthermore, there must be, at the time of location, a disputed, indefinite, or uncertain boundary line between the adjoining owners. It is said in Adams v. Warner, 209 App. Div. 394 (204 NYS 613):
>
> > 'When a disputed or uncertain line is fixed

by practical location, it is binding, not by way of transfer of title, but by way of estoppel.'" *Kincaid v. Peterson et al.,* 135 Or 619, 628, 297 P 833.

See also *Harris et ux. v. Backus et al.,* 212 Or 695, 321 P2d 315; *Satchell v. Dunsmoor,* 179 Or 463, 172 P2d 826; *Kingsley v. Jacobs,* 174 Or 514, 149 P2d 950; *Cooley et al. v. Henderson et al.,* 112 Or 258, 228 P 923; *Ogilvie v. Stackland,* 92 Or 352, 179 P 669; *Thiessen v. Worthington,* 41 Or 145, 68 P 424; *Lennox v. Hendricks,* 11 Or 33, 4 P 515.

■ The facts in this case do not meet the requirements of the practical location doctrine. The plaintiffs have failed to prove satisfactorily that there was an agreement upon the old fence as a boundary line, as had been agreed on the blazed line in *Harris et ux. v. Backus et al.,* supra.

It appears probable from the evidence that the old fence line was put in to restrain cattle, rather than an exact dividing or boundary line. The true line was easily ascertainable as the stakes and monuments at both ends thereof were in place. The mere fact that logging contractors were told that they would be safe in cutting up to the old fence was not sufficient to constitute the old fence as the boundary line by practical location or by acquiescence.

The decree of the circuit court is affirmed.