Argued May 23, affirmed July 22, reconsideration denied
August 22, petition for review denied September 24, 1974

CASCADIA LUMBER COMPANY, *Appellant, v.*
OREGON STATE HIGHWAY COMMISSION,
*Respondent.*

524 P2d 569

*James H. Lewelling,* Newport, argued the cause and
filed the brief for appellant.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

Plaintiff commenced an action in inverse condemnation seeking damages for rock removed by defendant from land which plaintiff alleged it owned. The defendant in an affirmative defense sought to quiet title in the defendant to the disputed tract from which the rock was taken. The court, disposing of the case solely on defendant's claim to quiet the title, held that the title should be quieted in the defendant and entered its decree accordingly. Plaintiff appeals.

The property in dispute lies in section 20, Township 10 South, Range 11 West of the Willamette Meridian. Defendant owns Government Lots 1 and 2 of that section. These are located immediately south of the south boundary of the Siletz Indian Reservation. The south boundary of Lots 1 and 2 constitute a common boundary between plaintiff and defendant. The dispute is over the correct location on the ground of the common boundary.

One assignment of error, which we will first consider, asserts:

"The Court erred in decreeing the letter [recorded] June 8th, 1929 from W. H. Hurlburt, et al to H. G. [sic] Echols was a boundary line agreement binding on the devisees of each of the respective parties."

It is not challenged that "W. H. Hurlburt, et al," therein referred to, at one time owned all the property here in dispute and was the common grantor through different chains of title to the present disputants.

The Echols purchased their property from the Hurlburts in 1926 by a land sale contract. They completed the payment by the end of 1928. Thereafter, they received deeds from the Hurlburts covering

> "That part of Lots One (1) Two (2) and Three (3) South of the south boundary of the Siletz Indian Reservation in Section Twenty (20) Township Ten (10) South Range Eleven (11) West of the Willamette Meridian * * * [and other property not here involved]."

The record shows that on June 7, 1929, the Hurlburts sent a letter in the following form to Mr. Echols:

> "Hood River, Oregon
> "June 7th, 1929.
>
> "Mr. H. E. Echols
> "Newport, Oregon
> "Dear Sir:
> "In consideration of our mutual agreement of May 12, 1929, the following will confirm the establishing of the South line of Lots 1, 2, and 3, Section 20, T 10 S, R 11 W. W. M.
> "That the S.E. corner of said Lot 1 shall be at a point 40 feet North from the old 12 tally stake which you found to be 3880 feet North from the section corner common to Sections 20, 21, 28, and 29, T 10S R11 W Wm. Thence on the South line of said lots 1, 2, and 3, south 89 degrees 50′ West to the Pacific Ocean, passing through a concrete monument set from your present random line on the East line of the Roosevelt Coast Highway,

about 23 feet South of the present planked road-way.

> "C. M. Hurlburt
> C. M. Hurlburt
> W. H. Hurlburt
> W. H. Hurlburt
> W. H. Hurlburt - Trustee -
> Agate Beach Land Company."

This was acknowledged and filed of record June 8, 1929, in Deed Book 56, Page 636, Lincoln County Deed Records.

Plaintiff concedes in its brief:

"In May of 1937, L. L. Krause became the owner of the East half of the Northeast Quarter of said Section 20, lying South of the South boundary of the Siletz Indian Reservation, (Exhibits 35, 36). In May of 1932, Charlotte M. Echols, acquired all of the right, title and interest in Lots 1, 2 and 3 by Quitclaim Deed from her husband, H. G. Echols, in connection with a divorce, (Exhibit 21),[①] and on June 29, 1942, she deeded to the State of Oregon by a metes and bounds description, (Exhibit 77). Cascadia Lumber Company acquired title from Krause to the East one-half of the Northeast Quarter of Section 20 lying South of the South boundary of the Siletz Indian Reservation on June 19, 1961 * * *."

Plaintiff contends that the true south boundary of Lots 1 and 2 is not at all as described in the above letter document and that the true east-west line marking the said south boundary in fact is a substantial

---

① Exhibit 21 does not include Lots 1 and 2. Since, however, both parties concede that Charlotte M. Echols did acquire title to Lots 1 and 2 from H. G. Echols and that defendant in turn acquired title to the land here in dispute from Charlotte M. Echols, we assume for the purposes of this opinion that those conceded facts are correct. The decree here, thus, quiets title only as between these parties.

distance north of the line described in the letter agreement set out above.

Defendant, on the other hand, contends that the true south boundary line of Lots 1 and 2, in fact, is south of the line described in the aforesaid letter agreement. But contrary to the plaintiff, it concedes that it is bound by the Hurlburt-Echols agreement.

Each party offered extensive evidence, primarily in the form of testimony and surveys and supporting documents made by both their own and various government surveyors in support of their respective positions.

Plaintiff, in its brief, asserts:

"* * * The letter of June 8th, 1929 from Hurlburt to Echols cannot be construed to be a boundary line agreement because it contains no words indicating that any dispute had arisen between the parties as to the location of the boundary between the parties nor did it contain any words to comply [sic] that there was any uncertainty as to the line but instead referred to some mutual agreement of the parties, the contents of which agreement are unknown to any of the parties here."

Essentially then, it contends that the letter agreement set out above is not a valid boundary line agreement. The trial court concluded otherwise, and quieted the title in accordance therewith in the defendant.

We note initially that we are not here dealing with an oral agreement but with a written and recorded document signed by the party who owned the land which was directly affected by it and who had sold the adjoining land to the persons to whom the written instrument setting forth the mutual agreement was delivered.

In *Harris et ux v Backus et al,* 212 Or 695, 321 P2d 315 (1958), the court considered at length the rules governing the establishment of a valid boundary by parol agreement between adjoining landowners. Much of the opinion deals with aspects of the law relating to parol agreements which, since the agreement here is evidenced by a written recorded document executed by plaintiff's predecessor in title, have no application here. In the course of its opinion upholding the validity of a parol boundary agreement between adjoining landowners, the court said:

"The issue between the parties as above disclosed is not a stranger to this court. It has been here several times before and this court has given attention to the principle of law which governs the issue: [Citations omitted.]

"An excellent dissertation upon our prior holding appears in Note and Comment, 28 Or L Rev 362. There it is stated

" '*   *   *   *   *

" 'Several Oregon cases deal with the doctrine of parol boundary agreements. The Statute of Frauds problem is disposed of by using the fiction offered by most courts; viz., that the parties take title, not from the agreement, but from their deeds as interpreted by their agreement.

" 'Oregon appears to have taken the liberal view with respect to the extent of uncertainty that must exist prior to the agreement. In *Thiessen v. Worthington*[①] it was only required that the agreement be a settlement of "a disputed boundary, *or* one that is uncertain *or* unascertained." In *Kincaid v. Peterson* [infra] it was only required that the agreement grow out

---

① 41 Or 145, 68 P 424 (1902).

of a "disputed, indefinite, *or* uncertain boundary."

" '* * * * *.' " 212 Or at 709-11.

Plaintiff contends that since the written agreement itself contains no express words referring to an existing boundary dispute it was error for the court in the absence of other evidence to so conclude. However, it points to nothing in the record to explain why, if there was no uncertainty concerning the boundary, the agreement was prepared, executed and acknowledged by the Hurlburts and by them delivered to the Echols who accepted and recorded it.

We think that there was sufficient evidence from the terms of the document itself and its preparation, delivery and recording to support the conclusion that an uncertainty existed in the minds of the adjoining owners as to the location of the now disputed boundary line. Its express purpose was to establish the south boundary of Lots 1, 2 and 3.

It is not, as stated above, disputed by the parties that if the agreement was a valid boundary agreement between their respective predecessors in title, it is binding upon them. The agreement was duly recorded and, as such, constitutes notice to them both.

In *Kincaid v. Peterson et al,* 135 Or 619, 297 P 833 (1931), the court discussed the doctrine of practical location in relation to boundary disputes and said:

"The doctrine of practical location is based principally upon agreement, express or implied, of adjoining landowners, whereby for many years they recognize or acquiesce in a certain line as their true boundary line. The doctrine is closely akin to

that of adverse possession, although the authorities recognize a clear distinction between them: *Carstensen v. Brown,* 32 Wyo. 491 (236 P. 517). Mutual acquiescence and recognition by the adjoiners is essential to practical location. Furthermore, there must be, at the time of the location, a disputed, indefinite, or uncertain boundary line between the adjoining owners. It is said in *Adams v. Warner,* 209 App. Div. 394 (204 N. Y. S. 613):

" 'When a disputed or uncertain line is fixed by practical location, it is binding, not by way of transfer of title, but by way of estoppel.' " 135 Or at 628.

We think that the execution here by one adjoining landowner of the agreement, its delivery by him to the other, and its prompt recording by the latter is ample evidence to establish the "* * * [m]utual acquiescence and recognition by the adjoiners * * *" necessary to warrant the application of the doctrine of practical location. *Kincaid v. Peterson et al,* supra.

Affirmed.