Argued and submitted April 27, reversed and remanded for reconsideration
November 23, 1983, reconsideration denied January 13,
petition for review denied February 8, 1984 (296 Or 411)

ROSS,
*Respondent,*

*v.*

DeLORENZO et al,
*Appellants.*

(80-4535-NJ-2; CA A25612)

672 P2d 1338

Donald M. Pinnock, Ashland, argued the cause for appellants. On the briefs were Jack Davis, and Davis, Ainsworth, Pinnock, Davis & Gilstrap, P.C., Ashland.

Steven L. Swartsley, Medford, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

This case involves a boundary dispute. Defendants appeal a judgment entered after a trial to the court declaring the boundary between plaintiff's property and theirs and awarding plaintiff damages for trespass. We review *de novo*, ORS 19.125(3), and reverse and remand.

The parcels of property at issue are Lots 1 and 2 in Block 2 of the Daley and Emery Additions to Eagle Point. At one time the two lots were owned by Josephine Holmes who built two houses and a duplex east of the houses on them. In 1973, after the three structures had been built, Holmes conveyed Lot 2 to plaintiff's predecessor, who sold to plaintiff in 1974.[1] Holmes conveyed Lot 1 to defendants in 1974. The conveyances describe the separate parcels by reference to the lots in the recorded plat and do not mention the structures. Neither plaintiff nor defendants made surveys when they purchased their respective property. Plaintiff or her tenants occupied the two houses after her purchase, and defendant or his tenants occupied the duplex after his purchase. A driveway runs adjacent to the duplex on the west, between it and the middle house. The testimony was in conflict as to the parties' use of the driveway after 1974. When plaintiff's husband built a shed at the end of the driveway, defendant became concerned about the exact location of the boundary between the properties. He spoke with plaintiff's husband, and the two contacted a title insurance company in an unsuccessful attempt to resolve the problem. Defendant also spoke with attorneys, but was unable to reach any settlement with plaintiff. A lawsuit respecting the location of the boundary was filed by defendant and dismissed for want of prosecution.

Finally, in 1980, defendant hired a surveyor, who placed the location of the boundary on a line almost exactly bisecting the middle house. The accuracy of this survey was stipulated at trial. After the survey, defendant sought the advice of another lawyer, who testified that, when confronted

---

[1] Plaintiff purchased the house with her husband, who executed a quitclaim deed to her in 1978. He died before trial. Defendant purchased with his mother. Her name is on the title, and so she is thus a defendant in this action. However, the trespass judgment was against him only. "Defendant" in the singular in this opinion refers to him.

with the survey results, plaintiff was not interested in negotiating an agreement regarding the property. Defendant's attorney advised him that, in order to avoid losing the property by adverse possession, he needed to terminate plaintiff's trespass. The property in dispute consists of 29 feet extending from the center of the middle house to the east edge of the driveway bordering defendant's duplex. On the basis of his understanding that the middle house was not occupied, the attorney advised defendant to take certain steps, including construction of a a wall down the middle of the house, to terminate plaintiff's occupation of the disputed area. While plaintiff was at work, defendant entered the house by removing the front door. He built a wall through the living room corresponding to the survey line and moved plaintiff's furniture to what he considered to be "her side of the house." Plaintiff sued and obtained a decree that the property line was the east side of the driveway bordering defendants' duplex and a judgment for general and punitive damages on the trespass claim.

The parties present the case as an application of the "doctrine of practical location." That doctrine has been used in Oregon appellate opinions to refer to a variety of analytical approaches by which a boundary different from the one described in the deeds may be recognized. *See* Note, 28 Or L Rev 362 (1949).[2] The parties here use the term to denote an agreement, express or implied, by which adjacent land owners fix an uncertain, indefinite or disputed boundary. *See Kincaid v. Peterson, et al,* 135 Or 619, 628, 297 P 833 (1931).

---

[2] "Practical location" has been used to describe at least four separate doctrines: practical construction, estoppel, agreement and acquiescence. *See, generally,* Note, 28 Or L Rev, *supra.* "Practical construction" properly relates to the actions of adjoining landowners in locating a boundary on their land when the deed description is ambiguous. In essence, the parties to the deed construe the ambiguous description by locating the boundary on the land consistent with their interpretation of the conveyances. *See Weniger v. Ripley,* 134 Or 265, 293 P 425 (1930); *Clark v. Hindman,* 46 Or 67, 79 P 56 (1905).

The term "acquiescence" or "boundary by acquiescence" has at times been considered synonomous with "practical location" in Oregon, at least where the agreement is implied rather than express. *See, e.g., Wampler v. Sherwood, infra; Drury et ux v. Pekar et al, infra.* The recognition of such agreements differs from the establishment of title by adverse possession in that such agreements are not considered to transfer title but rather fix the deed's boundary line by estoppel or agreement, *see Kincaid v. Peterson et al, infra.*

■ There are three essential requirements for application of the doctrine of boundary by agreement. First, there must be an initial uncertainty or dispute as to the "true" location of the boundary. The stated purpose of this requirement is to prevent the agreement from falling within the Statute of Frauds or violating other real property conveyancing requirements, for it establishes that the parties are resolving a dispute by mutually fixing an unknown boundary rather than by making a conveyance of land. *See Harris et ux v. Backus et al*, 212 Or 695, 710, 321 P2d 315 (1958) (quoting Note, 28 Or L Rev, *supra*, at 364). The element of resolution of uncertainty may also provide the consideration for the agreement. Note, 28 Or L Rev, *supra*, at 364. In Oregon the requirement is liberally construed; it is not necessary that the boundary be unascertainable, only that the parties be uncertain about its location, *Harris et ux v. Backus et al, supra*, 212 Or at 710-11, although it appears that the boundary must not be too easily ascertainable. *See Drury et ux v. Pekar et al*, 224 Or 37, 44, 355 P2d 598 (1960). The fact that the boundary could have been located by a survey does not prevent application of the doctrine. *See Wampler v. Sherwood*, 281 Or 261, 269-70, 574 P2d 319 (1978); *see also Satchell v. Dunsmoor*, 179 Or 463, 172 P2d 826 (1946).

■ Second, the uncertainty must be resolved by an agreement, express or implied, to recognize a particular line as the boundary. The boundary recognized must be mutually intended as permanent, not as a tentative or temporary boundary or as a mere barrier. *See Harris et ux v. Backus et al, supra*, 212 Or at 713; *Satchell v. Dunsmoor, supra; see also Drury et ux v. Pekar et al, supra*. The parties must intend to resolve the uncertainty; an attempt to locate the "true" line cannot change the boundary described in the deed. Note, 28 Or L Rev, *supra*, at 365.

■ Finally, the parties must evidence their agreement by subsequent activities. If the agreement is memorialized in writing, it may be recorded in the chain of title to establish the recognized dividing line. *See Cascadia Lbr. Co. v. Highway Comm.*, 18 Or App 144, 524 P2d 569, *rev den* (1974). If there is an express oral agreement, courts have required occupation to the boundary line in question, *see, e.g., Thiessen v. Worthington*, 41 Or 145, 148-49, 68 P 424 (1902). That requirement is sometimes referred to as "occupation and acquiescence."

*See* Note, 28 Or L Rev, *supra,* at 368; *Thiessen v. Worthington, supra,* 41 Or at 148-49.[3] Courts may also recognize an implied boundary agreement; although more difficult to establish, the elements are the same as those for an express agreement.

■ Confusion has arisen in some cases because of the varied use of the term "acquiescence." It has been used to refer to the period of occupation necessary to evidence an agreement or to refer to an implied boundary agreement. *See, e.g., Wampler v. Sherwood, supra,* 281 Or at 267; *Drury et ux v. Pekar et al, supra,* 224 Or at 43. In *Montgomery v. Sellers,* 48 Or App 719, 721, n 1, 618 P2d 5, *rev den* 290 Or 211 (1980), the terms "practical location" and "boundary by acquiescence" were referred to as "closely akin" to each other. "Acquiescence" has also been employed to denote another doctrine by which courts will recognize a boundary line which has been mutually acquiesced in by adjoining land owners for a substantial period of time. *See, e.g., Bernheim v. Talbot,* 54 Or 30, 100 P 1107 (1909). In such cases, even though the precise elements of an agreement are not present, the boundary line acquiesced in may be recognized in the interest of justice. *See* Tiffany, Law of Real Property 682-87, § 654 (3d ed 1975).

■ The inquiry is whether in this case plaintiff has met the requirements for establishment of a boundary by agreement. There is no contention that there was an express agreement; any agreement must be implied from the conduct of the parties. We conclude that the conduct of the parties here does not manifest a mutual intent to resolve an uncertainty by recognizing a particular line as the boundary, and thus plaintiff failed to prove an implied boundary agreement.

It is clear that plaintiff and her tenants occupied the middle house and performed other acts of occupation, such as mowing the lawn and clearing blackberry bushes in the disputed strip. She testified that the shed at the end of the driveway was built at her husband's direction, that she twice put gravel in the driveway, that defendant parked a few times in the driveway but moved his car when asked and that defendant made improvements for her on the middle house in exchange for a water heater. Defendant testified that he

---

[3] In *Corson v. Williford,* 44 Or App 145, 605 P2d 1194 (1980), we indicated that the period of occupation must last for the period specified in ORS 12.050.

parked in the driveway many times without objection and on one occasion removed an end post and wires from a clothesline in the disputed area without objection from plaintiff.

■      Plaintiff testified that during her period of occupation she believed the property to be hers. There is no evidence of mutual recognition of the uncertainty of the boundary until this dispute began before trial. Defendant did not testify as to where he thought the boundary was when he and his mother purchased, although for the most part he did not appear to disagree with plaintiff's occupation until the shed was build at the end of the driveway.[4]

The evidence here establishes only that the parties were laboring under a mutual mistake as to the location of their boundary. Cf. *Talbot v. Smith*, 56 Or 117, 123, 125, 107 P 480, 108 P 125 (1910) (defendant not precluded from claiming land outside a fence erected in the mistaken belief it was on the boundary line; there was no dispute or settlement); *Lennox v. Hendricks*, 11 Or 33, 4 P 515 (1883) (fence erected in belief it was on true line did not prevent ejectment). Further, we conclude that in this case there was not "acquiescence" for such a period of time that justice requires recognition of a line other than that established by the survey. The trial court therefore erred in decreeing the boundary to be different than described in the deeds. The judgment on the trespass claim was based in part on the court's conclusion that plaintiff owned the disputed strip of land. Plaintiff argues that, if we reverse the decision respecting the boundary, there is still sufficient evidence to support the award of damages. However, because of our decision respecting the ownership of the land, we conclude that the trial court must reconsider its decision

---

[4] Defendants argue that, under the facts of this case, plaintiff would have acquired title by adverse possession once ten years had passed. There is merit in the argument that application of the doctrine of practical location in this case would make the doctrine applicable in any case in which a party can show every element of adverse possession except the requisite time period and therefore would tend to vitiate the strictures of adverse possession. Under Oregon law, a person may establish title to land by adverse possession by showing that his possession was "actual, open, notorious, hostile, continuous and exclusive under a claim of right or color of title" for the ten-year period of the statute of limitations. *Russell v. Gullet*, 285 Or 63, 589 P2d 729 (1979); ORS 12.050. Possession is considered hostile even when the land is possessed in the mistaken belief that it is the land described in the possessor's deed. It is immaterial that the possessor would not have claimed the land as his own if he had known it was not included in his deed. *Norgard et al v. Busher et ux*, 220 Or 297, 349 P2d 490 (1960).

on the trespass claim. The parties presented the facts about defendant's actions in going on the property to build the wall, and it is unnecessary to retry the fact issues. The trial court can reconsider the decision based on the evidence presented.

Reversed and remanded for reconsideration of trespass claim.