Argued and submitted July 23, 1979, reversed January 28, 1980

CORSON, et ux,
*Respondents,*
*v.*
WILLIFORD, et ux,
*Appellants.*

(No. 7752, CA 12721)

605 P2d 1194

William A. McDaniel, Coos Bay, argued the cause for appellants. With him on the briefs was Foss, Whitty & Roess, Coos Bay.

Patrick Ford, Medford, argued the cause and filed the brief for respondents.

Before Schwab, Chief Judge, and Thornton, Buttler and Joseph, Judges.

THORNTON, J.

## THORNTON, J.

Defendants (Willifords) appeal from a judgment in what we assume was an action in ejectment. The trial court held that plaintiffs (Corsons) are owners by adverse possession or by acquiescence of a strip of land along their common boundary. The facts are complex and sharply disputed. A map is appended for illustrative purposes.

The strip in issue (ABEF) is wedge-shaped, approximately three feet deep at the east end, seven feet at the west end and 170 feet long. At all times before the dispute began, the entire parcel was covered with dense brush, poison oak and small trees. At the west end, the growth was so thick that none of the parties ventured into it except along a path cleared by defendants to provide beach access for plaintiffs' parcel. It was impossible to sight from one end of the parcel to the other.

The southern tract (AFGH), now owned by plaintiffs, was first sold in 1960 to the Utzes, who sold it to the Watsons in 1974. Plaintiffs purchased it in 1975. The northern parcel (ACDF) was first sold to the Castles in 1964 and they conveyed it to defendants in 1967. Plaintiffs stipulated that the record boundary (the "deed line" (AF)) between the two parcels was that determined from defendants' deed description by surveys in 1964 and 1974. However, they claim ownership by adverse possession and acquiescence up to a line north of the deed line ("adverse line" (BE)).

The Utzes (plaintiffs' predecessors), who had purchased the southern tract for a vacation site, erected a small cabin and left the balance of the property in a wild state. They believed they owned up to a pipe with a flag in it in the thicket at the west end of the adverse line.[1] They made no attempt to clear brush from the

---

[1] The implication from the testimony was that the pipe was put there in 1960 by a surveyor who marked the corners of the southern parcel at the time it was conveyed to plaintiffs' predecessors. The survey was not recorded and the surveyor died prior to trial.

disputed parcel, preferring to use it as a "privacy screen." They made a few plantings to fill in gaps in the screen but otherwise never entered the parcel. They constructed a fence along the western bluff line (FG) which came within several feet of the pipe to prevent their grandchildren from falling over the bluff. The Watsons essentially continued the use made by the Utzes.

Plaintiffs, however, made substantial alterations to the property, added to the house and removed many of the trees and shrubs. By the time of trial, the condition of the land had changed so drastically that Mr. Utz testified he "couldn't say within a few feet" where things had been.

The Castles (defendants' predecessors) visited the north parcel only three or four times during their ownership and made no alterations. In 1968, when defendants moved in, they began to clear away the natural flora and replace it with shrubs and small trees. Mr. Utz testified that, at some point, defendants had cleared up to the adverse line.

Prior to the dispute, which began on Memorial Day, 1974, the parties never discussed the precise location of the boundary. In response to the dispute, defendants commissioned a survey. The surveyor found the same line (the deed line) as that found and recorded in 1964. The 1964 surveyor testified that the pipe with the flag was within six inches of the deed line. However, plaintiffs testified that by their measurement the pipe was seven feet north of the deed line. Sometime prior to trial, defendant hammered the pipe into the ground and no attempt was apparently made to locate it. Consequently, the precise location of the pipe is not in evidence.

Defendants' predecessors testified they never saw the pipe and believed the boundary lay near some large trees in the northwest corner of plaintiffs' parcel which plaintiffs subsequently removed. Defendants acknowledged the existence of the pipe but refused to

admit it marked a boundary line. Plaintiffs and their predecessors unanimously stated they thought the pipe marked their northwest corner. This assertion was supported by their testimony mentioned above that they measured from their southwest corner (point G) to the pipe and obtained a measurement close to the 102.6 feet stated in their deed.

A great deal of testimony concerned the location of certain shrubs and trees on or near the disputed strip, most of which had been removed by the time of trial. The locations were important because of certain statements made by defendant that particular shrubs were on plaintiffs' land.[2] Because of the disposition we make of this case, this testimony need not be further detailed.

Following the dispute and 1974 survey, defendant placed stakes along the deed line and began to clear brush from the area. Plaintiffs, claiming legal title by adverse possession or acquiescence, brought this action to eject defendants from the disputed parcel. This is an action at law and we must affirm the trial court if there is any substantial evidence to support either legal theory. *Allison v. Shepherd,* 285 Or 447, 454, 591 P2d 735 (1979).

To establish a claim to land by adverse possession, plaintiffs must show actual use of the land which is open and notorious, hostile, exclusive and continuous for a period exceeding 10 years. *Almond v. Anderegg,* 276 Or 1041, 557 P2d 220 (1976). To satisfy the "open and notorious" requirement, plaintiffs must establish that defendants had notice, either actual or constructive, that plaintiffs were asserting a claim of ownership to a definite parcel of land. 3 Am Jur 2d 135-39, Adverse Possession §§ 47-48 (1962); *Miller v. Bushnell,*

---

[2] Plaintiffs also proffered evidence that, following the 1974 survey, defendant told several people that plaintiffs owed him seven feet of land. Defendants contended that these statements were in response to plaintiffs' demand for more land.

275 Or 45, 48-49, 549 P2d 655 (1976).[3] There was no evidence here to support a finding that plaintiffs' use of the parcel as a privacy screen was open and notorious for the required ten-year period.

The mere existence of the pipe, regardless of its actual location, is insufficient to put a reasonable person on notice of plaintiffs' claim because it was not shown to be an obvious boundary marker. Further, defendants were never informed that plaintiffs believed the pipe marked their northwest corner.[4] Finally, evidence of defendants' conduct with respect to the disputed boundary and statements that certain shrubs were on plaintiffs' side of the line, which could support a finding that defendants had knowledge of plaintiffs' adverse claim, does not show defendants' predecessors were aware or should have been aware of that claim. Since defendants purchased the parcel in 1967, the requirement that plaintiffs' use be open and notorious for ten years is not satisfied. ORS 12.050.[5]

For similar reasons, plaintiffs' claim of a boundary by acquiescence also fails. To establish a boundary by acquiescence, plaintiffs must show an agreement, express or implied, that a certain line is the boundary between two parcels and the true line must be uncertain, indefinite or disputed. Plaintiffs must occupy up to that line. *Kincaid v. Peterson,* 135 Or 619, 628, 297

---

[3] In *Reeves v. Porta,* 173 Or 147, 144 P2d 493 (1944), the court held evidence of a poorly-maintained barbed wire fence located off the road in dense brush insufficient to indicate that plaintiff was taking possession with the idea of claiming ownership. Similarly, in *Olson v. Williams,* 266 Or 592, 514 P2d 552 (1973), evidence that plaintiff planted a row of ornamental cedars and cultivated up to his claimed line was held insufficient to satisfy the open and notorious requirement where the land in question was brush-covered and the cedars were not visible for ten years prior to suit.

[4] The first affirmative statement defendants received that plaintiffs claimed the disputed strip was in 1974 when plaintiffs' predecessor Watson told defendants to stop cutting brush on the disputed land until the boundary question could be resolved.

[5] ORS 12.050 reads in part:

"An action for the recovery of real property, or for the recovery of possession thereof, shall be commenced within 10 years. * * *"

P 833 (1931); *Satchell v. Dunsmoor,* 179 Or 463, 469, 486, 172 P2d 826 (1946). ORS 12.050 requires that acquiescence continue for ten years before the rights of the legal owner are cut off. *Cf., Cooley v. Henderson,* 112 Or 258, 263, 228 P 923 (1924).

Any agreement in the instant case must be implied from defendants' statements and conduct mentioned above. There was no evidence defendants' predecessors acquiesced in any particular boundary; they believed the boundary lay at the deed line. The evidence fails to establish acquiescence for ten years.

Reversed.