Argued and submitted April 23,
reversed and remanded July 21, 1980

BARTELL, et ux,
*Respondents,*
*v.*
HOLLINSHEAD, et ux,
*Appellants,*
(No. 78-800-E, CA 14433)
617 P2d 688 P2d

C. H. Seagraves, Jr., Grants Pass, argued the cause
for appellants. With him on the briefs were Donald H.
Coulter and Myrick, Coulter, Seagraves & Myrick,
Grants Pass.

Wally P. Martin, Grants Pass, argued the cause for
respondents. With him on the brief was Martin and
Wolke, Grants Pass.

Before Richardson, Presiding Judge, and Thornton
and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

This is an appeal by defendants Hollinshead from a circuit court decree that plaintiffs are the owners by adverse possession of a strip of land 10 feet by 295 feet which lies between the parties' adjacent parcels. A map and diagram of the chain of title are appended for reference. Defendants Josephine County Title Company and Evergreen Federal Savings and Loan Association did not appear at trial and an order of default was entered against them. They are not involved in this appeal. The word "defendants" refers exclusively to the Hollinsheads.

Defendants raise three assignments of error; however, the dispositive assignment is the second, namely, that plaintiffs failed in their burden of proving the elements of adverse possession by clear and convincing evidence.

The essential facts are as follows:

Both parcels were originally owned by a common grantor, Fred Goetjen, whose son Jack now owns the land (originally part of the single tract) immediately to the south of plaintiffs. Fred Goetjen built the house that is now defendants' and a shed which defendants use as a garage. He also constructed a foundation for a second residence which was never completed. About 1950 Goetjen decided to sell what is now plaintiffs' parcel. Goetjen believed that a fence which bounded the land on the south accurately reflected the surveyed boundary. He and his son measured from this fence north and the son, who testified at trial, stated that their intent was to include the foundation in the parcel to be conveyed. A line was drawn, which also ran through the southern portion of the shed, and measurements were taken upon which the descriptions in the deeds were based.

In 1950, this parcel was conveyed to the Badleys who also owned land across the road. In 1953 the parcel was conveyed to the McIntires, who in turn

[147]

conveyed to plaintiffs in 1973. Fred Goetjen lived on what is now defendants' tract until his death in 1960. This parcel was sold by his executor in 1962. Defendants eventually bought the property in 1969. They are concededly the record owners of the disputed strip.

In 1965, the McIntires commissioned a survey of their property. This survey showed that the south fence which had originally been used to make measurements for the deed descriptions was not on the true boundary, which actually lay to the south by several feet. This discrepancy, for the most part, accounts for plaintiffs' northern boundary in the deed description being ten feet south of where they believed it lay. The surveyor placed stakes in the ground to designate the corners of the McIntires' land. Mr. McIntire was dead at the time of trial and Mrs. McIntire could not recall whether they were informed by the surveyor of the encroachment of the foundation on defendants' parcel. In 1978, defendants commissioned a survey of their tract by the same surveyor and he located the pins from the 1965 survey. Plaintiffs also had a survey which reached the same result.

Prior to plaintiffs' ownership, the entire parcel was virtually overgrown with blackberries. The McIntires did, at some point, expand the foundation within the disputed strip with the intent of building a house. This project was finally abandoned in 1971 when the building materials purchased for the house were destroyed by fire. Mrs. McIntire was unable to recall when work on the foundation was done. Defendant testified that in 1969 when he purchased the north tract, the foundation was overrun with weeds. Jack Goetjen testified he never observed work on the foundation or other use of the property by the McIntires. Mrs. McIntire testified that the back portion of the property, including part of the disputed strip, had been cleared by a friend for use as a garden. She could not remember what years the garden operation covered, but testified it had been there between four and six

years until a year or so before they sold the land to plaintiffs in 1973.

Defendant testified he observed no activity on the parcel between 1969 and 1973. With McIntire's permission he had used a portion of theirs and Jack Goetjen's land as a pasture for his horse for several years. Defendants cleared up to a line just north of the old foundation and, although there was no fence, it gave the appearance of a property line. Defendants had never made any use of the disputed area other than as pasture. They planted a garden behind the shed but its borders are consistent with the apparent boundary. Defendant testified he was never certain of the true boundary location but understood it ran through the foundation.

Plaintiffs purchased and moved onto their parcel in 1973. They cleared the entire parcel and located a trailer house more or less on the site of the old foundation. This was done without the objection of defendants. Plaintiffs made other improvements which need not be detailed here, all with the apparent acquiescence of defendants. The dispute which gave rise to this suit to quiet title arose sometime in early 1977.

We turn now to the dispositive assignment of error. As we analyze the evidence following *de novo* review, there is insufficient proof that plaintiffs and their predecessors made use of the disputed strip in a manner sufficiently open and notorious and continuous to put defendants on notice that plaintiffs were asserting a hostile claim to the land in question. *Miller v. Bushnell,* 275 Or 45, 48-49, 549 P2d 655 (1976). Regardless of whether plaintiffs' own use of the parcel (clearing and location of the mobile home thereon) is sufficiently open and notorious to give notice of adversity, it is apparent that since plaintiffs occupied the land for less than four years before this dispute began, the plaintiffs' predecessors' (the McIntires') use must also have been of such a character in order to meet the

ten year prescriptive period necessary for adverse possession. ORS 12.050.

The mere existence of the foundation is insufficient notice to defendants of plaintiffs' adverse claim. *Corson v. Williford,* 44 Or App 145, 150, 605 P2d 1194 (1980).[1] An overgrown foundation is not an obvious boundary marker. Mrs. McIntire was unable to state when expansion of the foundation had occurred or how long the work took. It may have been as early as 1953, long before the northern parcel was sold. Both defendant and his predecessor testified that the foundation was never worked on between 1967 and the time plaintiffs removed it in 1973.[2]

With respect to the garden established on the parcel by the McIntires' friend, we conclude that, while gardening may be a sufficient use to give notice of an adverse claim, the evidence was not "clear and convincing" that such a use was continuous between 1967 and 1973, the period of time which plaintiffs need to tack in order to satisfy the prescriptive period. *Lee v. Hansen,* 282 Or 371, 375, 578 P2d 784 (1978); *Reeves v. Porta,* 173 Or 147, 153, 144 P2d 493 (1944). Because this use was not continuous, plaintiffs are not entitled to tack, and, therefore, their claim must fail.

---

[1] In *Corson,* we considered a similar situation in which an unenclosed, undisturbed strip of brush lying between two parcels of beachfront residential property was "used" as a privacy screen. At one end of the strip stood a pipe with a flag on it which may have been a boundary marker. We held that this use did not give sufficient notice that plaintiffs in that case claimed to the line suggested by the pipe.

[2] The trial court stated that the evidence was clear that the original grantor had intended to include the foundation with plaintiffs' parcel and that a mistake had been made with the deed description. While the evidence does bear this out, such a mistake is immaterial in the context of adverse possession unless defendants had been given actual notice of this intent. There was no evidence defendants or their predecessors were ever informed within the ten years prior to the dispute of intent to build on the foundation or to claim the boundary indicated by its location.

The defendants counterclaimed for ejectment of plaintiffs from the parcel and damages. Because the trial court quieted title in plaintiffs, it made no ruling on the counterclaim and defendants did not assign as error the failure to rule in their favor on the counterclaim. The case is therefore remanded for the entry of a judgment on defendants' counterclaim consistent with this opinion.

Reversed and remanded.