Argued and submitted December 16, 1987, affirmed September 14, reconsideration denied November 25, 1988, petition for review denied January 4, 1989 (307 Or 303)

HAMMACK et ux,
*Respondents,*

*v.*

OLDS et ux,
*Third-Party Plaintiffs - Appellants,*
*and*

BARNHART et ux,
*Defendants,*

*v.*

JUKER,
*Third-Party Defendant - Respondent.*

(9274; CA A43318)

761 P2d 541

George W. Kelly, Eugene, argued the cause and filed the briefs for appellants.

Raymond S. Baum, La Grande, argued the cause for respondents. With him on the brief was Helm, Baum & Riedlinger, La Grande.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendants[1] appeal a judgment that set the boundary between their property (the north tract) and plaintiffs' property (the south tract) and awarded $1,326 in damages to plaintiffs for the loss of use and damage to real property. The primary issue is whether the boundary between the north and south tracts was established in 1954 "by agreement." We review *de novo* and affirm.

The disputed boundary runs east and west. Plaintiffs bought the south tract in 1954. At that time, plaintiff Vernon Hammack's father and mother owned the north tract. In 1954, Vernon and his father attempted to identify the boundary between the two parcels. They knew of no surveys of the area more recent than 1881. They looked for, but were unable to find, survey monuments. Vernon testified that he and his father were "absolutely uncertain" where the section corner actually was but that they agreed to treat an old rail fence as the boundary, in part because they could see that the fence line extended beyond their lands and appeared to mark the boundaries between neighboring parcels. He said that the two men believed that the fence marked the actual boundary line between their tracts and orally agreed that it did.

The wives of Vernon and his father were also owners of entirety interests. The evidence does not show that either of them was present when Vernon and his father agreed to the boundary. The court correctly concluded, however, from Vernon's testimony that the husbands discussed the boundary with their respective wives and that the wives also agreed to treat the fence line as the boundary between the parcels.

In 1960, the old fence was removed, but plaintiffs and Vernon's parents continued to treat the line where it had stood as the common boundary. Each tract was farmed as a separate unit. There was a visible plough berm between the two tracts. Thereafter, the father and then the mother died. In 1976, Vernon, as personal representative of his mother's

---

[1] We refer to the Olds as defendants. The court entered a judgment of default against defendants Barnhart in favor of plaintiffs and the Olds as third-party plaintiffs. The court entered a judgment that dismissed Olds' counterclaims against plaintiffs and third-party claims against Juker and granted plaintiffs and Juker a judgment against Olds for costs.

estate, sold the north tract to the Barnharts under a land sale contract. Vernon and his sister, Vernice Juker, as devisees of their mother's estate, also gave the Barnharts a general warranty deed.[2] In 1983, the Barnharts sold the north tract to defendants, assigned their interest in the land sale contract to them and gave them a general warranty deed.

In 1984, defendants employed a surveyor to survey the boundary. That survey placed the boundary on a line that ran between 18 and 28 feet south of where the fence had been. Relying on the survey, defendants commenced to dig and lay an irrigation pipe line on the disputed land which lies north of the survey line and south of the line where the fence had been. When plaintiffs objected, defendants stopped digging for a period of one or two weeks until the surveyor rechecked his survey notes and confirmed his survey. Defendants then finished digging and laying the pipe line.[3]

The court found:

"Plaintiffs have established by irresistable and credible evidence that in 1954 there was some uncertainty between the plaintiff and his father as to the true location of the boundary, that they resolved it by oral agreement, establishing the rail fence, and that all subsequent actions, the farming and other use of the property, are consistent with their agreement.

"* * * * *

"Thus, the boundary is set by the agreements and acts of the parties and not by any subsequent surveys."

■ Defendants assign as error that the court held that plaintiffs and Vernon's parents had fixed the boundary "by

---

[2] The contract to the Barnharts described:

"The Southeast quarter of the Southeast quarter of Section 31; the North half of the Southwest quarter; the Southwest quarter of the Southwest quarter of Section 32, Township 1 South, Range 44 East, of the Willamette Meridian."

The deed to the Barnharts contained the same description.

[3] Plaintiffs held a majority of the stock in the company that did the work. It was managed, however, solely by plaintiffs' son. The court found no merit in defendants' claim that Vernon was estopped from claiming the disputed land because he did casual work for the company. Defendants do not challenge that finding.

agreement."[4] In *Blaisdell v. Nelson,* 66 Or App 511, 674 P2d 1208 (1984), we held that an oral agreement on a boundary does not violate the Statute of Frauds and is enforceable if uncertainty or dispute exists as to the true location of the boundary, the uncertainty is resolved by agreement and the agreement is evidenced by the parties' subsequent actions. The reason that an oral agreement that meets these requirements does not violate the statute is that it *interprets,* rather than *alters,* the property deed description and, therefore, does not effect a conveyance or transfer of real property.

They argue that plaintiffs failed to prove that Vernon and his father were uncertain as to the location of the boundary. Defendants contend that Vernon and his father were certain of the location of the boundary and *believed* with certainty that the fence was on the actual boundary. Defendants argue that that belief was wrong and that the agreed boundary was the result of "mutual mistake" of Vernon and his father and should not affect ownership of the disputed land.

Contrary to defendants' contention, the agreed boundary was not the result of "mutual mistake." *See Lennox v. Hendricks,* 11 Or 33, 4 P 515 (1883). The evidence shows that plaintiffs and Vernon's parents, defendants' predecessors in interest, were *uncertain* of the actual location of their common boundary. In 1954, Vernon and his father were "absolutely uncertain" where the section corner was located. They were unable to locate any monuments or markers from the 1881 survey. The evidence shows that because they were uncertain as to the location of the boundary—not because they were mistaken as to its location—the parties agreed to observe the fence line as the boundary between their properties. Their subsequent farming practices conformed to their agreement and evidenced it.

Defendants also argue that the court erred because there could be no boundary by agreement where only

---

[4] In addition to their claim of boundary "by agreement," plaintiffs asserted that the boundary was established "by acquiescence" and "by practical location." The court found that plaintiffs prevailed on each theory. The parties, however, do not separately address each theory on appeal. Defendants state that the issues to be decided under any of these theories are the same. We have stated that the theories are indistinguishable and that we prefer the term "boundary by agreement." *Blaisdell v. Nelson, supra,* 66 Or App at 514.

"[Vernon and his father] of the four necessary parties [Vernon, his father and their respective wives] participated in the agreement." Defendants argue that plaintiffs did not prove that the wives were ignorant of the location of the true boundary. Vernon testified, however, that the agreement was "a family affair" and that he and his father consulted their respective wives about it. We agree with the trial court that the wives were also uncertain about the location of the true boundary and that they participated in, and abided by, the agreement to treat the fence line as the true boundary.

■     Defendants also assign as error that the court found without merit their defenses of estoppel by deed and estoppel by contract. They argue that, even if plaintiffs could establish a valid boundary by parol agreement, Vernon and Vernice Juker, as devisees of their mother's estate, are estopped by their deed to the Barnharts to the north tract from asserting that they had held "an estate or interest in land less than that estate or interest which the deed purported to convey." ORS 93.850(2)(b). Defendants also argue that Vernon is estopped by contract from asserting a claim to the disputed land because, as personal representative of his mother's estate, he executed a land sale contract in favor of the Barnharts that also described the north tract. Defendants assert that Vernon cannot now deny that his parents formerly owned the disputed land. The court did not err. The agreement between Vernon and his father did not alter the deed description. Rather, Vernon and his father "located" on the ground by agreement the line that both the deed and the contract described. The deed and the contract, therefore, are not inconsistent with the parol agreement.

■     Defendants also asserted counterclaims for trespass against plaintiffs and for breach of contract and breach of warranty against Vernon. They also asserted third-party claims for breach of contract and breach of warranty against Juker. Defendants assign as error that the court dismissed all those claims. They argue that, even if the court correctly upheld the boundary by agreement, the warranty deed and land sale contract to the Barnharts contained warranties of title to the land which the instruments describe. As we noted above, the contract and the deed are not inconsistent with the boundary agreement. The court did not err when it dismissed the claims.

Affirmed.