Argued and submitted July 22, 1996, affirmed July 2, petition for review denied October 7, 1997 (326 Or 62)

Carolyn Jean EIDMAN,
*Appellant,*

*v.*

Steven E. GOLDSMITH
and Janet L. Goldsmith,
husband and wife,
successors in interest to
Jack Eugene Jones and Jeralyn Irene Jones,
husband and wife,
and Arthur Porras and Patricia Porras,
husband and wife,
*Respondents.*

(93-3087-E-2; CA A88585)

941 P2d 1045

Richard B. Thierolf argued the cause for appellant. With him on the briefs was Jacobson, Jewett & Thierolf, P.C.

John R. Hanson argued the cause for respondents. With him on the brief was Werdell, Charter and Hanson.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

This boundary dispute concerns three adjacent landowners on the outskirts of Phoenix, Oregon, in Jackson County. Plaintiff brought this action to quiet title on two strips of land along the north and east boundaries of her property. The strips are included in the legal description of her parcel but lie outside the existing fencing on the property. The trial court dismissed plaintiff's case against defendants Jones, who owned the north adjoining property and sold it before trial, and entered judgment quieting title in favor of defendants Porras, the adjoining landowners on plaintiff's east side. The trial court also ordered the Porrases' deed reformed. We review *de novo*, ORS 19.125(3); *Hammack v. Olds*, 93 Or App 161, 761 P2d 541 (1988), *rev den* 307 Or 303 (1989), and affirm.

Plaintiff purchased the property that is the subject of the present dispute. The parcel is one of four that were originally owned by Elsie Oliver[1] and Marjorie and Allan Stewart (the Stewarts) as a common block. The parcels were sectioned off by fencing and those fences remain standing in the same location where they were originally erected.

Together, Oliver and the Stewarts purchased the tract of real property in 1967. In 1974, they divided the property into four lots and moved trailers onto the property with the intent of developing permanent home sites. Oliver testified that she and the Stewarts sectioned the property into four parcels by erecting fences, with everything inside the fence line considered as belonging to that parcel. She testified that, "We really were uncertain as to the exact property line area but this was agreeable between us." She further testified that she and the Stewarts subsequently treated the fence lines as the boundary lines.

In 1983, Oliver and the Stewarts sold the first parcel to Woodwards and subsequently applied for a lot line adjustment. Oliver testified that they sought a lot line adjustment

---

[1] Oliver's name was Gelsinger at all pertinent times below, but since 1991 her name has been Oliver. For the sake of consistency we refer to her as Oliver throughout.

"to have the measurements correspond exactly with the parcel inside each fence line." After Jackson County approved the adjustment, a legal description for each parcel was prepared. Oliver and the Stewarts walked the property and measured the fence lines with a tape measure. They recorded the measurements and submitted them to a title company with instructions to prepare "new legal descriptions to correspond with the measurements." The title company prepared the legal descriptions and re-recorded the corrected deeds. None of the deeds contained any reference to the fence lines.

In 1987, the Joneses purchased the parcel adjoining plaintiff's parcel on the north side. Oliver testified that she walked the property with the Joneses before the sale and told them that the fence lines were the limit of their property. Similarly, Jack Jones testified that when he purchased the property he understood that the fence line marked the property boundary line. He testified that Oliver "wanted me to walk around the property with her to make sure I understood exactly what the perimeters of my property would be and what I was buying." The Joneses' deed did not refer to the fence lines.

Later, in 1988, the Porrases purchased the parcel that adjoins plaintiff's parcel on the east. Again, Oliver testified that she told the Porrases that the fence lines marked the property boundary line. Patricia Porras testified that they walked the property lines with Oliver and believed that they were buying, "[e]verything within the fence lines because the fence lines were walked, and I was shown everything within the fence lines." The Porrases' deed did not refer to the fence line.

Plaintiff purchased her parcel at an auction later in 1988. She did not review any legal documents or descriptions of the property beforehand and gained all of her knowledge about the property she now owns at the auction. Although she arrived late, she heard the broker's announcements "about what was being sold," and saw the fence lines. She testified that when she bought the property she did not care where the property lines actually were because she intended to have the property surveyed to establish the boundaries. Patricia Porras and Oliver also attended the auction. Both

testified that the broker announced, on a number of occasions, that "you were buying what you saw inside the fence lines."

In 1993, plaintiff hired a surveyor to conduct a boundary survey. Comparing plaintiff's deed with the Porrases' deed, the surveyor discovered that the legal descriptions overlapped in the northeast corner of plaintiff's parcel, taking in a part of the Porrases' parcel. Moreover, the surveyor concluded that the existing fence lines on plaintiff's property on the north and east sides are inside the boundaries described in plaintiff's deed.

On the strength of that survey, plaintiff filed a complaint "in equity to quiet title," naming the Joneses and the Porrases as defendants, seeking to quiet title in accordance with the legal description in her deed. Defendants answered and counterclaimed for a declaration that the existing fence lines were the true property boundaries between the respective properties under two theories: boundary by agreement and adverse possession.[2] They also sought a reformation of each parties' legal description to conform to the fence line boundary. After a trial to the court, the court entered judgment in favor of defendants Porras and dismissed the claim against defendants Jones, who had sold their property before trial. It declared the boundary line between plaintiff's property and the Porrases' property, under the theory of boundary by agreement, to be the existing fence line and reformed the legal description of the property belonging to the Porrases accordingly. This appeal followed.

On appeal, plaintiff makes five assignments of error challenging the trial court's dismissal of the Joneses (assignments one and two), and its quieting and reforming title in favor of the Porrases on the theory of boundary by agreement (assignments three through five).

Plaintiff's first two assignments have been resolved by an administrative order of this court. Before trial below, the Joneses sold their property to the Goldsmiths. Following

---

[2] Defendants abandoned their adverse possession counterclaim on appeal because they did not cross-assign error to the trial court's entry of judgment against them on that theory. We therefore do not address it here.

trial, but before oral argument here, the Goldsmiths moved to be substituted as successors in interest to the Joneses pursuant to ORAP 8.05(1); ORCP 34 E. We granted that motion and entered an order to that effect. It therefore follows that our disposition here is binding on the Goldsmiths.

■ On the merits, we first address plaintiff's assignment that the trial court erred in quieting title in the Porrases. Plaintiff's theory is that the legal description in her deed controls the demarcation of her property boundaries. It follows, she argues, that the trial court's application of the boundary by agreement doctrine constitutes error because the trial court used it to circumvent her deed. Plaintiff points to two statutes in support of her argument: (1) ORS 93.850(2)(b),[3] and (2) ORS 42.300.[4]

Plaintiff holds both statutes out for the proposition that her warranty deed is paramount and that the trial court therefore erred, because the Porrases, the Joneses, and the original grantor, Oliver, are estopped from "contradicting" the legal description in her deed. In essence, plaintiff asserts an estoppel by deed argument against parties who played no role, and had no part, in the conveyance of her property—defendants Jones and Porras did not convey anything to plaintiff, nor did they act as representatives for Oliver in the transaction.

Even assuming that ORS 93.850 applies against defendants Jones and Porras here, plaintiff's argument fails. We rejected the estoppel by deed argument under analogous facts in *Hammack*. In that case, the parties' predecessors in

---

[3] ORS 93.850 provides, in part:

"(2) A [warranty] deed * * * shall have the following effect:

"* * * * *

"(b) The grantor, the heirs, successors and assigns of the grantor, shall be forever estopped from asserting that the grantor had, at the date of the deed, an estate or interest in the land less than that estate or interest which the deed purported to convey and the deed shall pass any and all after acquired title."

[4] ORS 42.300 provides:

"Except for the recital of a consideration, the truth of the facts recited from the recital in a written instrument shall not be denied by the parties thereto, their representatives or successors in interest by a subsequent title."

interest established the boundary line between their adjacent parcels of land by agreeing that an old rail fence was the boundary. The most recent area survey was 73 years old and the landowners were unable to find any survey monuments. They were "absolutely uncertain" where the section corner actually was but believed that the fence marked the actual boundary between their tracts and orally agreed that it did. Thirty years later, the defendant, who then owned the north tract, had the boundary surveyed and discovered that the boundary line ran between 18 to 28 feet south of where the fence had been. The trial court held that the parties' predecessors in interest had fixed the boundary by agreement. The defendant appealed, arguing, *inter alia*, estoppel by deed, *i.e.*, that the grantor, having conveyed the property described by a legal description, could not be heard to claim she had conveyed less. We held that the parties to the division of the property had, by agreement, located on the ground the line that the deed attempted to describe. 93 Or App at 166.

We see no reason, and plaintiff offers none, why the *Hammack* rationale should not also apply under the present facts. The only difference here is that the agreement of the parties to the division predates, and formed the basis of, the legal description of plaintiff's property. In that light, it follows that the parol agreement establishing the fence line as the property boundary is also not inconsistent with plaintiff's deed. The deed merely misdescribes the true boundary. We also reject plaintiff's argument under ORS 42.300 for the same reasons.

Next, plaintiff assigns error to the trial court's application of the doctrine of boundary by agreement. She contends that the doctrine is not applicable under the present facts. An oral agreement to fix a property boundary between adjacent landowners is enforceable if there is uncertainty as to the true location of the boundary, the uncertainty is resolved by agreement and the agreement is evidenced by the parties' subsequent actions. *Blaisdell v. Nelsen*, 66 Or App 511, 514, 674 P2d 1208 (1984).

Plaintiff maintains that the only parties relevant to the inquiry are plaintiff and Oliver, as the original grantor, and, thus, the trial court erred by focusing on the parties to

the original property division, Oliver and the Stewarts. That argument is not well taken. The agreement is also binding on the parties' successors in interest, as long as they have actual or constructive notice of it. 2 Tiffany, *Real Property* 682, § 654 (3rd ed 1939). *See also Hammack* (each tract farmed as a separate unit and visible plough berm line between the two tracts); *Blaisdell* (fence line separating tracts). We find that plaintiff received notice that the fence line was the boundary before purchasing the property when she heard the broker at the auction announce that the property for sale consisted of everything "inside the fence line." It follows that the trial court did not err in allowing the Porrases' deed to be reformed to reflect the true property line. *Zink v. Davis*, 203 Or 49, 277 P2d 1007 (1954).

Plaintiffs' other arguments lack merit.

Affirmed.