Argued and submitted February 11, award of $1,250 survey costs reversed;
judgment modified to award $4,500 in damages; otherwise affirmed
October 14, 2009

Steve WRIGHT,
Juanita Wright,
and Joyce Estremado,
*Plaintiffs-Respondents,*

*v.*

Jack WELLS
and Marilyn A. Wirshup,
*Defendants-Appellants,*

*and*

Edonna WELLS,
*Defendant.*

Jackson County Circuit Court
052271E2; A137233

218 P3d 569

Frank C. Rote argued the cause for appellants. With him on the briefs was Brown, Hughes, Bird, Rote, Wetmore & Brouhard, LLP.

W. V. Deatherage argued the cause for respondents. With him on the brief was Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, P.C.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Defendants appeal from a judgment declaring plaintiffs to be the owners of a strip of property based on the trial court's conclusion that plaintiffs had established a boundary agreement or adverse possession of the property by clear and convincing evidence. As part of its judgment, the trial court also awarded plaintiffs damages and allowed reasonable attorney fees. Defendants contend that the trial court erred in determining that plaintiffs had presented evidence to establish ownership of the property at issue by a boundary agreement or adverse possession and that it erred in awarding damages and attorney fees to plaintiffs. We reverse in part.

We find the following facts on *de novo* review, ORS 19.415.[1] Plaintiffs and defendants own adjacent parcels of land in rural Jackson County; plaintiffs' property is to the east of defendants' property. This case involves the parties' dispute regarding the appropriate boundary between their properties. Walter Dye, defendants' predecessor-in-interest, and Damian Estremado, plaintiffs' predecessor-in-interest, erected a fence on the property in the late 1940s. Dye and Estremado chose a location for the fence, which they agreed would be the boundary line between their properties. Neither of them had had a survey conducted, and they were uncertain as to where the actual property line was, but they agreed where they thought it "ought to be."

Although Dye and Estremado agreed that the fence was to represent the boundary between the two properties, its other purpose was to keep Estremado's cattle away from Dye's garden. The neighbors did not fence the entire property line, but did extend it a significant distance. Estremado's cattle used the property as a grazing area, including the portion up to the agreed boundary line. As of the time of trial, cattle belonging to plaintiffs and their predecessors-in-interest had been using that property on a consistent basis for more than

---

[1] ORS 19.415(3), which governs our standard of review in equitable cases such as this one, was recently amended by Oregon Laws 2009, chapter 231, section 2. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Because the notice of appeal in this case was filed before that date, the amendments do not apply.

50 years. Portions of the property are brushy and have steep terrain. However, cattle are free to and do range through that area. Cattle graze in the wooded area and also use that area "to come through and then come over to where it's more open[.]"

The fence was not kept in good repair over the years and, by some point, there were only fragments of it remaining in many places. In 1998, plaintiffs obtained a survey of the location of the northeast corner of their property. That surveyor did not survey the property line. That year, defendant Jack Wells began constructing a new fence, which started at the north end of the boundary line. He followed the old fence line for some distance, but then installed a portion of the new fence several feet to the east of the old fence line. The fence did not extend the full length of the property at that time. Plaintiff Juanita Wright instructed Wells that he could leave the fence as he had built it, but to put the rest of the new fence on the same line as the old fence. Wells did not continue building the new fence until 2004, when he began to remove the remainder of the old fence. Thereafter, Wells continued installation of a new fence to the east of the old line. He also moved an iron pipe that had been along the old fence.

Plaintiffs demanded that defendants cease constructing the fence in the new location. In addition, they obtained a survey showing the location of the old fence. The surveyor testified that there had never been a survey of the part of the property on which the fence was located. He also testified that he had found no record of the iron pipe and could not say what it represented.

The trial court determined that plaintiffs established ownership of the disputed area by proving both adverse possession and establishment of a property boundary by agreement. Defendants dispute both conclusions. We agree that the evidence was sufficient to establish boundary by agreement and, therefore, do not consider defendants' arguments with respect to adverse possession.

■■■ There are three elements necessary to establish a boundary by agreement: (1) there must be an initial uncertainty or dispute as to the true location of the boundary; (2) the uncertainty must be resolved by an agreement,

express or implied, to recognize a particular line as the boundary; and (3) the parties must evidence their agreement by subsequent activities. *Gibbons v. Lettow*, 180 Or App 37, 43-44, 42 P3d 925 (2002). To satisfy the second element, the boundary at issue must be intended by the parties to be permanent, rather than temporary or a mere barrier. *Ross v. DeLorenzo*, 65 Or App 586, 590, 672 P2d 1338 (1983), *rev den*, 296 Or 411 (1984). Furthermore, a "boundary by agreement may not be established by placing a fence where both parties think the actual boundary lies; the agreed-upon boundary must represent an attempt to resolve the parties' uncertainty as to the true location of the boundary." *Gibbons*, 180 Or App at 44. With respect to the third requirement, where the boundary is set by "an express oral agreement," the party seeking to establish a boundary by agreement must have occupied land under the boundary agreement. *Ross*, 65 Or App at 590.

Here, it is undisputed that the first element of a boundary by agreement, an initial uncertainty about the boundary, has been met. The testimony at trial established that the parties' predecessors-in-interest were unaware of where the boundary between the properties was and that, in fact, there has never been a survey to establish such a boundary line. The evidence also shows that, although the parties' predecessors-in-interest did not know where the actual boundary between their properties was, they decided together on a location for the fence and that that location would also represent the boundary line. Dye testified that he and Estremado agreed to a boundary line that was where they assumed the boundary "was supposed to be." Contrary to defendants' assertion that there was merely "a mutual mistake as to the location of their boundary," Dye's testimony was unequivocal that he and Estremado "had no idea of where [the boundary] actually should have been. [They] just agreed where [they] thought it ought to go." The evidence clearly demonstrates an express agreement.

Defendants also contend that, because the fence was meant to keep cattle away from Dye's garden, "[m]ost likely it was intended as a mere barrier." We disagree. The mere fact that the fence was to have some utility, *i.e.*, protecting a garden from roaming cattle, does not undermine the fact that

the parties expressly agreed on its location as the boundary between their properties. By their agreement, they resolved their uncertainly as to the "true" boundary and satisfied the second requirement for a boundary by agreement.

Finally, over the years, plaintiffs did, in fact, occupy their property up to the agreed boundary as required. Their cattle and that of their predecessors-in-interest ranged over and grazed on the entire property up to the boundary for many years up to and including the time of trial. Although it is not clear how much actual time the cattle spent on the disputed property, the evidence established that they were there on a regular basis over a period of many years. The land in question is and has consistently been part of a cattle ranch, and the cattle have been allowed to range on it as well as the remainder of the ranch. Under the circumstances, plaintiffs' grazing of their cattle on the land at issue was sufficient to satisfy the requirement that they occupy the land up to the boundary line. *Cf. Davis v. Parke*, 135 Or App 283, 287, 898 P2d 804, *rev den*, 321 Or 560 (1995) (cattle ranging through and grazing on disputed property was sufficient to support a claim for adverse possession where use was same as their other property and that for which the land was suitable). Accordingly, the trial court did not err in concluding that plaintiffs owned the property at issue as the result of a boundary by agreement.

■ Next, defendants argue that the trial court erred in awarding plaintiffs damages for replacement of the fence. That argument is unpersuasive. Although an extended discussion of this issue would not benefit the public, bench, or bar, we note that plaintiffs' complaint specifically requested damages for defendants' destruction of the fence, and the trial court awarded those damages. Given our conclusion that plaintiffs have established a boundary by agreement, it was not improper for the trial court to permit plaintiffs to recover the costs of rebuilding the fence that defendants destroyed.

■ We turn to the award of plaintiffs' survey costs. Plaintiffs' complaint specifically sought to recover the cost of the survey pursuant to ORS 209.990, and the trial court awarded those damages. ORS 209.990 provides, in part:

> "(1) The costs of reestablishment of the corner or witness monument may be recovered in a civil action together with costs and attorney fees for the prevailing party."

ORS 209.005(5) defines the term "monument" as "any permanent material object or collection of objects, either natural or man-made, that indicates the position on the ground of a survey station, public land survey corner or accessories, or a land boundary corner established by a qualified surveyor."

Here, the undisputed evidence was that there had never been a survey of the area at issue. Furthermore, the survey obtained by plaintiffs was specifically to ascertain the exact location of the old fence. Given that no survey of the area had been completed, and that a "monument" marks a position in relation to a previous survey, neither the fence nor the iron pipe could be "monuments" as defined in the statute. Accordingly, plaintiffs could not properly recover survey costs pursuant to ORS 209.990.[2]

■■ Defendants finally argue that the trial court erred in awarding plaintiffs attorney fees pursuant to ORS 209.990. The judgment provides that "plaintiffs have judgment for their reasonable attorney fees pursuant to ORS 209.990" but does not award a specific amount of fees. "[A] trial court declaration that a party is entitled to attorney fees is not final without a determination of the fee amount." *Petersen v. Fielder*, 170 Or App 305, 309, 13 P3d 114 (2000). Accordingly, the trial court was required to enter a supplemental judgment resolving all issues relating to attorney fees before any award of attorney fees could be properly brought before this court. *See id.* at 309-10. In light of the fact that attorney fees were never finally adjudicated in this case, we do not reach the propriety of such an award herein.

Award of $1,250 survey costs reversed, judgment modified to award $4,500 in damages; otherwise affirmed.

---

[2] The parties agree that the trial court incorrectly awarded a total of $6,750 in damages when the amount should have been $5,750 ($4,500 in damages for destruction of fence plus $1,250 in survey costs). Given our conclusion that the trial court should not have awarded plaintiffs' survey costs pursuant to ORS 209.990, neither of those amounts is correct. Instead, the total amount of damages is $4,500, the amount that the trial court determined plaintiffs suffered as a result of defendants' destruction of the old fence.