Argued and submitted December 2, 2010, affirmed June 8,
petition for review denied October 20, 2011 (351 Or 254)

POWERS RANCH COMPANY, INC.,
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

PLUM CREEK MARKETING, INC.,
an Oregon corporation;
and Plum Creek Timberlands LP,
an Oregon limited partnership,
and all other person or persons, known or unknown,
claiming any right, title, lien or interest in the property
described in the complaint herein,
*Defendants-Respondents.*

Curry County Circuit Court
07CV0759; A142396

258 P3d 1275

Janet M. Schroer argued the cause for appellant. With her on the briefs was Hoffman, Hart & Wagner, LLP.

R. Daniel Lindahl argued the cause for respondents. With him on the brief were Matthew C. Casey and Bullivant Houser Bailey, PC.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Senior Judge.

SCHUMAN, P. J.

### SCHUMAN, P. J.

This case concerns a boundary dispute. Plaintiff argues that the trial court erred in concluding that the true boundary between the properties had not been moved through operation of doctrines known as "boundary by agreement" and "boundary by acquiescence." Because neither of those doctrines applies unless the assertedly new boundary resolves an initial dispute or uncertainty as to the original boundary, and no such dispute existed in this case, we agree with the trial court. Accordingly, we affirm.

Although plaintiff requests *de novo* review of this case involving equitable doctrines, ORS 19.415(3)(b), the parties do not disagree as to the relevant underlying facts; they dispute only the trial court's legal conclusions based on those facts. We review those conclusions for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

Plaintiff, Powers Ranch Company, Inc. (Powers Ranch), and defendants, Plum Creek Marketing, Inc. and Plum Creek Timberlands LP (collectively Plum Creek), own adjoining tracts of timberland in Curry County. The two tracts and the two boundaries involved in this dispute are represented schematically on this rough map.

The "LaFlamme line" was created in 1990, when Georgia Pacific owned the property now owned by Plum Creek, and it hired Jack LaFlamme to survey the property so it could harvest timber up to the dividing line between its property and

Powers Ranch's property. LaFlamme performed his survey and recorded it in the office of the Curry County Surveyor. The LaFlamme line between the two properties was marked by "blazing" the trees with red paint, the customary industry-wide practice for marking property lines between neighbors. During this time, Powers Ranch did not know that a survey of the boundary was being completed and did not discuss the boundary with Plum Creek, and Plum Creek harvested the timber up to the LaFlamme line and no farther. Powers Ranch never had its own survey done and relied on the line created by Plum Creek. Over the years, numerous loggers and hunters relied on the LaFlamme line marked by the blazed trees and understood the line to mark the boundary between Plum Creek and Powers Ranch.

In 2006, Plum Creek had another survey done in order to mark out the upper northeast corner of its property. Gary Smither was hired to do this survey and, when he did so, he discovered that the LaFlamme line was incorrect. The boundary between the properties was actually two miles further east—encroaching on to the property originally believed to be owned by Powers Ranch. After the Smither survey was completed, Plum Creek logged the timber up to the new dividing line ("Smither line").

Powers Ranch first became aware of this boundary issue only after Plum Creek harvested the strip between the LaFlamme line and the Smither line. Representatives of Plum Creek and Powers Ranch met later in 2006 to discuss the boundary dispute. Only at that point did Powers Ranch learn of both the LaFlamme and Smither surveys.

Powers Ranch began this suit by filing a quiet title action asking the court to set the boundary between the two properties at the LaFlamme survey line. At trial, Powers Ranch argued that the LaFlamme line was the correct line based on either of two equitable doctrines: "boundary by agreement" or "boundary by acquiescence."[1] Additionally, Powers Ranch argued that, because the LaFlamme line was the boundary, Plum Creek had committed trespass when it

---

[1] Powers Ranch also made an adverse possession claim, which the trial court rejected. That ruling is not challenged on appeal.

logged the trees to the Smither line. The trial court disagreed and found that the Smither line was the correct boundary and that there was no boundary by agreement or acquiescence. Powers Ranch now appeals.

As we explained in *Ross v. DeLorenzo*, 65 Or App 586, 590, 672 P2d 1338 (1983), *rev den*, 296 Or 411 (1984), there are three elements to boundary by agreement:

"First, there must be an initial uncertainty or dispute as to the 'true' location of the boundary. The stated purpose of this requirement is to prevent the agreement from falling within the Statute of Frauds or violating other real property conveyancing requirements, for it establishes that the parties are resolving a dispute by mutually fixing an unknown boundary rather than by making a conveyance of land. * * *

"Second, the uncertainty must be resolved by an agreement, express or implied, to recognize a particular line as the boundary. The boundary recognized must be mutually intended as permanent, not as a tentative or temporary boundary or as a mere barrier. The parties must intend to resolve the uncertainty; an attempt to locate the 'true' line cannot change the boundary described in the deed.

"Finally, the parties must evidence their agreement by subsequent activities. If the agreement is memorialized in writing, it may be recorded in the chain of title to establish the recognized dividing line. If there is an express oral agreement, courts have required occupation to the boundary line in question[.]"

(Citations omitted.) An agreement between the parties may be express or implied. *Gibbons v. Lettow*, 180 Or App 37, 44, 42 P3d 925 (2002). To demonstrate an agreement by implication, however, the conduct of the parties must be shown to "manifest a mutual intent to resolve an uncertainty by recognizing a particular line as the boundary." *Ross*, 65 Or App at 591.

Boundary by acquiescence is related to boundary by agreement. Boundary by acquiescence allows courts to recognize a boundary line to which parties have agreed for a substantial period of time—long enough that the courts will recognize the boundary line "in the interests of justice." *Id.* At

the very least, however, the location of the true boundary must be unknown or disputed. *Gibbons*, 180 Or App at 46.

At trial, Powers Ranch argued that the mere fact that the LaFlamme survey was completed and that the two property owners used the LaFlamme line as the boundary for 16 years demonstrated an implied agreement that the LaFlamme line was the boundary line. The trial court concluded, however, that, because Powers Ranch did not know of the LaFlamme survey before it was completed and was not involved in that process, the LaFlamme line could not be a boundary by agreement or boundary by acquiescence; the line was not mutually agreed upon to resolve uncertainty or dispute. We agree with the trial court.

This case is factually similar to *Gibbons*. In *Gibbons*, the parties owned adjacent parcels in rural Douglas County. *Id.* at 39. Some time before the 1940s someone—no one knew who—built a barbed-wire fence between the two properties. Thereafter, the parties worked under the assumption that the fence was the boundary line. Eventually, the parties disputed the ownership of the strip of land west of the fence line. In 2000, a survey was conducted that showed the true boundary line was 45 to 60 feet west of the fence line. Suit to quiet title followed. The defendants argued that the fence line was the boundary under theories of boundary by agreement and acquiescence.

We concluded that the defendants had not established a boundary by agreement:

"It bears some emphasis that boundary by agreement may not be established by placing a fence where both parties think the actual boundary lies; the agreed-upon boundary *must represent an attempt to resolve the parties' uncertainty as to the true location of the boundary.* * * *

"In this case, [the] defendants have not established the elements of their boundary by agreement claim. * * * [T]here is no evidence of any communication of * * * uncertainty between [the various land owners], much less an agreement to recognize a particular line as a boundary."

*Id.* at 44-45 (emphasis added).

The same is true in this case. Here, Plum Creek did not have the LaFlamme survey done in order to resolve a dispute or uncertainty between Plum Creek and Powers Ranch. Plum Creek simply had the survey done for its own benefit. There was no "attempt to resolve the parties' uncertainty as to the true location of the boundary" because Powers Ranch was not involved in the line-drawing process.

Powers Ranch appears to argue that, because one party was uncertain and had a survey, that fact establishes the uncertainty requirement of boundary by agreement. That is incorrect. There must be *mutual* uncertainty that is then *mutually* resolved by the drawing of a boundary line. *Ross*, 65 Or App at 590. There was no mutual uncertainty or mutual resolution here. For that reason, the LaFlamme survey cannot serve to relocate the true boundary of the properties.

The same is true for boundary by acquiescence. Powers Ranch argues that the trial court erred in concluding that the boundary by acquiescence doctrine did not apply because "the location of the true boundary is known and not disputed as stated above [and] the *other requirements* of boundary by agreement are not present." (Emphasis added.) According to Powers Ranch, the trial court erred because it failed to distinguish between boundary by agreement and boundary by acquiescence.

Although we agree that the trial court could have chosen clearer wording, we disagree with Powers Ranch's conclusion. For boundary by acquiescence to apply, "the location of the true boundary must be unknown and disputed." *Gibbons*, 180 Or App at 46. While the other two elements of boundary by agreement may not be present in the doctrine of boundary by acquiescence, the first element is essential. *See Harris et ux v. Backus et al*, 212 Or 695, 711, 321 P2d 315 (1958) ("[W]e think that the predecessors in interest of the parties, after deeming *uncertain* the true location of the boundary line, terminated the *uncertainty* by agreeing informally or implied upon the blazed line. If it be argued that the evidence does not show that they came together, agreed expressly, and, having done so, shook hands, it nevertheless shows, according to our belief, that they *agreed* impliedly." (Emphases added.)).

Here, there was no dispute or uncertainty communicated between the parties about the boundary until Plum Creek logged to the Smither line. The LaFlamme line was not drawn or agreed upon to resolve a dispute or uncertainty. Therefore, we conclude that Powers Ranch failed to demonstrate that the true boundary had been adjusted through boundary by acquiescence.

Affirmed.