Argued and submitted January 5, reversed and remanded November 16, 2022

Donaciano J. RAMOS
and Kelli A. Ramos,
*Plaintiffs-Appellants,*

*v.*

Phillip K. POTKOWSKI
and Sydney Rae Potkowski,
*Defendants-Respondents.*

Clackamas County Circuit Court
19CV18589; A174275

521 P3d 840

In a boundary dispute between neighbors, plaintiffs appeal from a general judgment that dismissed their claims for trespass and ejectment. The trial court ruled in favor of defendants on their counterclaims utilizing defendants' boundary-by-agreement defense. Plaintiffs contend that the trial court erred in concluding that there was an oral boundary agreement because there was no mutual uncertainty about the true location of the boundary, the boundary was readily ascertainable, and there was no agreement to a specific boundary. *Held*: The trial court erred in concluding that there was an oral boundary agreement. A shared mistake in locating a boundary is neither mutual uncertainty nor mutual agreement on a new boundary where the alleged uncertainty is merely about location and the parties' predecessors referred to the true boundary in their subsequent conveyances to the present parties.

Reversed and remanded.

Katherine E. Weber, Judge.

Richard E. Davis, Jr. argued the cause for appellants. Also on the briefs was Clark Law & Associates, LLC.

Jonathan W. Henderson argued the cause for respondents. Also on the brief were Christopher M. Parker, and Davis Rothwell Earle & Xóchihua, P.C.

Before Mooney, Presiding Judge, and Pagán, Judge, and DeVore, Senior Judge.*

MOONEY, P. J.

Reversed and remanded.

_____

* Pagán, J., *vice* DeHoog, J. pro tempore.

**MOONEY, P. J.**

In this boundary dispute between neighbors, plaintiffs appeal from a general judgment dismissing their claims for trespass and ejectment, finding in favor of defendants on defendants' counterclaims by declaring defendants to be the owners of the disputed property, and ordering reformation of the boundary line in accordance with the boundary agreement established under defendants' first affirmative defense. Plaintiffs assign error to the trial court's ruling that there was an oral boundary agreement.[1] We agree with plaintiffs that the trial court erred. Thus, we reverse and remand.

We decline plaintiffs' request to conduct *de novo* review because this is not an exceptional case as that term is used in ORAP 5.40(8)(c). We review the court's legal conclusions for errors of law, being bound by its factual findings so long as there is evidence in the record to support them. *Hammond v. Hammond*, 246 Or App 775, 777, 268 P3d 691 (2011).

The relevant facts are largely undisputed. The parties are neighbors. They own adjacent parcels of land in a West Linn subdivision known as Marylhurst Heights. Defendants' predecessors Shannon and Casey Bernard conveyed Lots 5, 6, and 14 of Marylhurst Heights block 6 to defendants on or about December 13, 2016.[2] Plaintiffs' predecessors Shane and Linda Dyer conveyed Lot 7 of Marylhurst Heights block 6 to plaintiffs on or about April 20, 2017. Plaintiffs' property abuts defendants' property on two sides.

---

[1] Plaintiffs raise four assignments of error, each challenging various aspects of the trial court's ruling on defendants' affirmative defense of boundary by agreement. Those assignments amount to separate arguments in support of a single assignment of error. ORAP 5.45(3) ("Each assignment of error must identify precisely the legal, procedural, factual or other ruling that is being challenged."); *see, e.g., Marc Nelson Oil Products, Inc. v. Grim Logging Co.*, 199 Or App 73, 75 n 1, 110 P3d 120, *adh'd to as modified on recons*, 200 Or App 239, 115 P3d 935 (2005) ("[A]ssignments of error * * * are to be directed against rulings by the trial court, not against components of the trial court's reasoning or analysis that underlie that ruling."). We nevertheless proceeded with our review because it was not impeded by the errant recitation of assignments.

[2] The Bernards conveyed additional land in Marylhurst Heights to defendants that is not relevant to this case.

The relationship of the parties' respective lots to each other is represented schematically in the following illustration:



Figure 1



The Dyers purchased what is now plaintiffs' property (Lot 7) in 1993. Mr. Dyer testified that, in 1993, he spoke with Bob Kramer, a nearby neighbor and owner of unrelated property who lived behind the property now owned by defendants (Lots 5, 6, and 14). They spoke about the location of the east boundary to Lot 7. Kramer showed Dyer what Kramer believed was the location of the boundary. From that day forward, Dyer generally understood his property to be the triangular area illustrated below:

Figure 2



The Bernards acquired what is now defendants' property (Lots 5, 6, and 14) in 2014. Mr. Bernard testified that, in July 2015, he met with Dyer and Kramer to discuss the location of the boundary lines between Lot 7 and Lots 6 and 14. Dyer showed Bernard the line that Kramer had showed him in 1993:

> "[BERNARD]:  The three of us, before I put the shop in, had a meeting together, because I wasn't clear on where the property line was.
>
> "And [Kramer] showed us where the corner property lines, my wife and I, [Kramer] and [Dyer]. And he showed us where—where there were two stakes or two points. And then [Dyer] showed us where he and [Kramer] understood that the property line was.
>
> "*****
>
> "[DEFENSE   COUNSEL]: After  this  meeting  you described, did you feel that you had an understanding with [Dyer] that that would be the boundary line?
>
> "[BERNARD]:   Yes."

At trial, Bernard indicated that he and Dyer had reached an understanding that the boundary lines between Lots 6 and 7 were as shown below by lines A and B:

Figure 3



Dyer confirmed that he had had a "vague discussion" with Bernard and Kramer about the location of the boundary. But he testified that he did not make a boundary agreement; he simply relied on Kramer's indication of its location.

After that discussion, Bernard made various improvements to the area east of the B-line and northeast of the A-line, including installing a shed, creating a dirt road, and constructing a gate. Sometime later, defendants installed a chicken coop next to the shed.

In 2016 when the Bernards conveyed Lots 6 and 14 to defendants, the Bernards' disclosure statement to defendants declared that there were no boundary agreements, boundary disputes, or recent boundary changes. Likewise, in 2017 when the Dyers conveyed Lot 7 to plaintiffs, the Dyers' disclosure statement to plaintiffs declared that there were no boundary agreements, boundary disputes, or recent boundary changes. In both sets of conveyances to the parties, their respective properties were conveyed to them with the legal description provided and created by the 1947 plat, showing plaintiffs' Lot 7 with four sides (figure 1), rather than a perfect triangle (figure 2) or an irregular quadrilateral figure with lines A and B (figure 3).

When defendants purchased the Bernard property, they believed that the area on which the shed and road existed was on their side of the boundary line. Likewise, plaintiffs initially did not believe that the area on which the shed and chicken coop existed was on their side of the boundary line. The parties' predecessors Dyer and Bernard had the same understanding, based on the same misinformation from neighbor Kramer about where the true boundary lay. Despite that common source, the predecessors had different ideas about what Kramer had told them. Thus, plaintiffs were under the initial impression that the boundary line between the lots was as illustrated in figure 2 (making a perfect triangle), while defendants were under the impression that the boundary was lines A and B in figure 3 (making an irregular quadrilateral figure).

Plaintiffs considered building an accessory dwelling unit (ADU) on their property and contacted the county to

discuss the boundaries of their lot. Plaintiffs learned that the 1947 plat of the neighborhood placed the boundary line further north and northeast than they had thought, and that the shed and some of the other improvements made by defendants or the Bernards were actually on plaintiffs' property. Plaintiffs subsequently hired a land surveyor who confirmed that the disputed parcel of land was located on plaintiffs' lot. The surveyor located the northeast corner of plaintiffs' Lot 7, bordering defendant's Lot 6, finding an existing stake or monument under asphalt from defendants' Lot 14.

Plaintiffs filed this ejectment action against defendants alleging trespass (Count 1) and a right to possession (Count 2). They sought economic, noneconomic, and treble damages.

Defendants admitted that the parties owned adjacent lots, "but subject to the boundary line dispute at issue in this case." Defendants also raised a number of defenses and counterclaims, including an affirmative defense based on a boundary-by-agreement theory. Defendants argued that the parties' respective predecessors in interest, the Dyers and the Bernards, entered into an oral boundary agreement during their conversation in July 2015.

Following trial, the court found in favor of defendants on plaintiffs' claims, specifically utilizing defendants' boundary-by-agreement defense. The trial court found that the Dyers and the Bernards were uncertain as to the true location of their adjoining properties, and that they entered into an oral agreement to set the boundary lines in July 2015.

Plaintiffs appeal. They contend that the trial court erred by concluding that there was a boundary by agreement. Among other things, they argue that the evidence did not support the legal conclusion of mutual uncertainty; that there was, at best, unilateral uncertainty about the location of the true boundary; that the true boundary was readily ascertainable; and that the parties failed to agree on a "particular line" for an agreed boundary.

In Oregon, boundary-by-agreement is a common-law doctrine with three elements:

1. There must have been an initial and mutual uncertainty or dispute about the true location of the boundary;

2. There must have been a mutual resolution of the uncertainty or dispute by an express or implied agreement to permanently recognize a particular line as the boundary; and

3. There must be evidence of the agreement by subsequent activities (for example, recording a written agreement or occupying the property up to the border line in the case of an express oral agreement).

*Powers Ranch Company v. Plum Creek Marketing*, 243 Or App 371, 375, 258 P3d 1275, *rev den*, 351 Or 254 (2011); *Gibbons v. Lettow*, 180 Or App 37, 43-46, 42 P3d 925 (2002).

Juxtaposed against those seemingly simple elements are limitations that qualify their meaning. Principal among those limitations is that evidence that establishes only that the parties labored under a mutual mistake as to the true location of their boundary does not establish the location of their boundary. *Ross v. DeLorenzo*, 65 Or App 586, 592, 672 P2d 1338 (1983), *rev den*, 296 Or 411 (1984) (rejecting claim of boundary by agreement). As to that point, we have explained:

> "It bears some emphasis that boundary by agreement may not be established by placing a fence where both parties think the actual boundary lies; the agreed-upon boundary must represent an attempt to resolve the parties' uncertainty as to the true location of the boundary."

*Gibbons*, 180 Or App at 44 (rejecting claim for boundary by agreement); *see also Wright v. Wells*, 231 Or App 349, 353, 218 P3d 569 (2009) (sustaining claim of boundary by agreement where the parties had no idea where the boundary should be and agreed to resolve the location with a fence).

That limitation explains the enigmatic qualification often expressed along with the second element. That is, the mutual agreement must settle an existing uncertainty,

but "an attempt to locate the 'true' line cannot change the boundary described in the deed." *Powers Ranch Company*, 243 Or App at 375. In plain language, a mutually mistaken location of a true boundary is not the resolution of a *bona fide* uncertainty about the true boundary. *See Gibbons*, 180 Or App at 43-46 ("there must be an initial uncertainty or dispute as to the 'true' location of the boundary"); *Gibbons*, 180 Or App at 44 (no boundary agreement where the parties merely think they have located the true boundary); *see also Blaisdell v. Nelsen*, 66 Or App 511, 515 n 3, 674 P2d 1208 (1984) (if the parties had erected the fence where they merely thought they *knew* where the boundary was, then those facts would have been insufficient to make a claim by boundary by agreement).

One indication that the parties continued to rely on the boundary described in a deed or plat as their true boundary is their subsequent reference to the deed or plat as establishing the boundary. *See Markovich v. Chambers*, 122 Or App 503, 505, 857 P2d 906 (1993) (a party's use of a 1981 survey in a lot line adjustment was contrary to a claim of boundary by agreement); *see also Brunswick v. Rundell*, 126 Or App 582, 586, 869 P2d 886 (1994) (a party's grazing lease and easement referred to the deeded boundary rather than a new fence).

On this record, it is undisputed that the parties and their respective predecessors all relied on a single source of misinformation—another neighbor, Kramer—who merely thought he was locating the boundary between Lots 6 and 7 according to the respective deeds that referred to the true boundary created by the 1947 plat. For his part, plaintiffs' predecessor Dyer just did not know where the true line was located on the ground and did not have an opinion of his own. And defendants' predecessor Bernard testified that he agreed with Dyer that the line was as Kramer described it. Shortly after the 2015 discussion among Dyer, Bernard, and Kramer, both the Bernards and the Dyers conveyed their properties to the present parties as the properties shown as Lots 6 and 7 according to the 1947 plat; and they went on in disclosure statements to declare expressly that there were no boundary agreements that modified the true boundaries.

Taken together, the record reflects a mutual mistake in locating an otherwise agreed true boundary as described in the deeds and as shown on the plat.

Mutual mistake in location is not mutual uncertainty about the true boundary, which the parties tried to locate and to which they continue to agree. *See Ross*, 65 Or App at 592; *Gibbons*, 180 Or App at 44. Therefore, the trial court erred as a matter of law in concluding on this record that there originally had been the requisite "initial uncertainty" that was settled in a mutually agreed new boundary by agreement.[3]

Reversed and remanded.

---

[3] Because we find the record insufficient to establish the requisite uncertainty as a predicate to an agreement, we do not need to reach the final argument whether the parties' predecessors failed to agree on a "particular line," whether one or two lines, forming the boundary between Lots 6 and 7.